743 So.2d 570 (1999)
POWERTEL, INC. and Powertel/Jacksonville, Inc., Appellants,
v.
Dana C. BEXLEY, on behalf of herself and all others similarly situated, Appellee.
Nos. 98-2746, 98-3357.
District Court of Appeal of Florida, First District.
September 1, 1999.
Rehearing Denied October 21, 1999.
*571 John A. Tucker, E. Robert Meek and John S. Mills of Foley & Lardner, Jacksonville, for Appellants.
Barbara Slott Pegg of Barbara Slott Pegg, P.A., Ponte Vedra Beach; Kenneth A. Tomchin and Christopher J. Iseley of Tomchin & Odom, P.A., Jacksonville, for Appellee.
PADOVANO, J.
Powertel appeals a nonfinal order denying its motion to compel arbitration. We conclude that the arbitration clause at issue is unconscionable and therefore unenforceable. Moreover, the lawsuit pending in the trial court is not subject to arbitration *572 because it was filed before Powertel attempted to add the disputed arbitration requirement to the parties' agreement. Consequently, we affirm the trial court's determination that the parties are not required to submit the case to arbitration.
Dana Bexley signed an agreement with Powertel on December 11, 1997, to purchase a cellular telephone service plan known as the "Personal Power 40 Plan." According to this plan, Ms. Bexley was to receive four hundred minutes of calling time within Powertel's local service area in return for a monthly access fee of forty dollars. Calls outside the local service area were treated as long distance calls and they were subject to additional charges. Powertel defined the local service area on a coverage map which was provided to Ms. Bexley at the time of the agreement.
On March 31, 1998, Ms. Bexley filed a complaint in the Circuit Court for Duval County alleging that Powertel had wrongfully billed her $4.50 in long distance charges for telephone calls within the local service area. She filed the suit on her own behalf and as a representative of the class of Powertel customers who had been wrongfully charged additional fees for local cellular telephone calls from April 1, 1993, until the filing of the action. The complaint sought damages for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and violation of Florida's Deceptive and Unfair Trade Practices Act.
The day after the complaint was filed, Ms. Bexley received her Powertel bill in the mail, and included in the envelope with the bill was a pamphlet describing the terms and conditions of Powertel's service. This pamphlet restated many of the same terms and conditions outlined in the pamphlet accompanying the original service contract, but it also included a new provision relating to the resolution of disputes. The new provision states,
Any unresolved dispute, controversy or claim arising out of or relating to [Powertel's] service, including but not limited to a claim based on or arising from an alleged tort, shall be settled by arbitration administered by the American Arbitration Association under its Wireless Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
* * *
The parties acknowledge that use of [Powertel's] service evidences a transaction in interstate commerce. The United States Arbitration Act and federal arbitration law shall govern the interpretation, enforcement and proceedings pursuant to this arbitration clause.
According to the pamphlet, the effective date of the revised terms and conditions of service is February 1, 1998. The record shows, however, that the pamphlet was not received until April 1, 1998, after the lawsuit had been filed.
Powertel maintains that the arbitration clause was a valid modification of the original service contract and that it applies to the pending lawsuit as well as any future dispute between the parties. This argument is based on the following provision of the original service contract:
[Powertel] will provide you [the customer] with at least ten (10) days' prior notification of any changes or modification to these Terms and Conditions of Service or of any change to [Powertel's] rates. By your continued use of the Company's service following receipt of notice of such changes or modifications, you will be deemed to have accepted and agreed to them.
The record reveals that Ms. Bexley continued her telephone service for more than ten days after she received the notice of the new arbitration clause. Powertel argues that by the terms of the original service contract, Ms. Bexley's failure to cancel her phone service was an implied agreement to resolve all disputes by arbitration. *573 Because the arbitration clause refers to "unresolved" claims, Powertel reasons that Ms. Bexley effectively agreed to dismiss her pending lawsuit as well and to resolve the underlying claim in arbitration.
These arguments were presented to the trial court on May 13, 1998, in a motion to stay the pending lawsuit and to compel arbitration. At various points during the hearing, the trial court questioned the validity of the arbitration clause and its applicability to the present action. Among other concerns, the trial court noted that the pamphlet containing the arbitration clause was not conspicuous and that it was indistinguishable from advertisements and other inserts consumers typically find in their monthly bills. At the close of the hearing, the trial court denied the motion to compel arbitration. On September 1, 1998, following an amendment to the complaint, the trial court entered a written order denying the motion to compel arbitration. Powertel then filed a timely appeal to this court.
We have jurisdiction to review the order by appeal, even though it is not a final order. Rule 9.130(a)(3)(C)(v) of the Florida Rules of Appellate Procedure provides that the court may hear an appeal from a nonfinal order that determines "the entitlement of a party to arbitration." See Amour and More North American Licensing, Inc. v. Zammatta, 659 So.2d 1387 (Fla. 3d DCA 1995); Southland Ventures, Inc. v. J.W. Harvey & Sons, Inc., 471 So.2d 222 (Fla. 2d DCA 1985). This rule provides a method of obtaining an early decision on the proper forum for resolving a dispute, see State, Department of Health and Rehabilitative Servs. v. Electronic Data Sys., 664 So.2d 332 (Fla. 1st DCA 1995), and thereby avoids the possibility that a party might be forced to litigate the entire controversy in the wrong forum before the error can be corrected.
The trial court's denial of the motion to compel arbitration is based on the language of the original service contract and the documents purporting to modify the contract. A decision construing a contract presents an issue of law that is subject to review on appeal by the de novo standard of review. See Inter-Active Services, Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433 (Fla. 5th DCA 1998); Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London, 696 So.2d 376 (Fla. 1st DCA 1997). A determination that a contract is unconscionable falls within this general class of decisions and is likewise reviewable by the de novo standard. See Garrett v. Janiewski, 480 So.2d 1324 (Fla. 4th DCA 1985). Here, the trial court did not decide any issue of fact. Nor did the court exercise judicial discretion. Because the order denying Powertel's motion to compel arbitration is based entirely on the trial court's construction of the contract and related documents, we review the decision by the de novo standard.
An arbitration clause in a contract involving interstate commerce is subject to the Federal Arbitration Act. See Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).[1] According to section 2 of the Act, arbitration agreements are "valid, irrevocable, and enforceable, save on such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
Section 2 prohibits the states from placing greater restrictions on arbitration clauses than those that apply to other contract provisions. In the leading case of Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the Supreme Court determined that section 2 preempts contrary provisions in state law. The state statute at *574 issue in Casarotto provided that a contract subject to arbitration must contain a notice typed on the first page in capital letters and underlined, informing the parties of the arbitration clause. The Court reasoned that the notice requirement was invalid because it applied only to contracts that are subject to arbitration and not to "any contract" as provided in section 2 of the Federal Arbitration Act.
Although the states may not impose special limitations on the use of arbitration clauses, the validity of an arbitration clause is nevertheless an issue of state contract law. Section 2 states that an arbitration clause can be invalidated on such grounds as exist "at law or in equity for the revocation of a contract." Thus, an arbitration clause can be defeated by any defense existing under the state law of contracts. As the Court explained in Casarotto, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]." 517 U.S. at 687, 116 S.Ct. 1652.
Applying general principles of contract law, we hold that the arbitration clause in this case is unconscionable and therefore unenforceable. It is an adhesion contract which not only provides for a method of dispute resolution but also dictates a one-sided waiver of important substantive rights. Moreover, we conclude that the arbitration clause cannot apply retroactively to the pending lawsuit. Ms. Bexley had filed the suit before she was even aware of Powertel's intention to modify the contract to require arbitration. Although the arbitration clause refers to unresolved disputes, its language is far too general to constitute a voluntary dismissal of a dispute which had by then ripened into a lawsuit.
Florida courts may properly decline to enforce a contract on the ground that it is unconscionable. See Steinhardt v. Rudolph, 422 So.2d 884 (Fla. 3d DCA 1982). To support a determination of unconscionability, however, the court must find that the contract is both procedurally unconscionable and substantively unconscionable. See Belcher v. Kier, 558 So.2d 1039 (Fla. 2d DCA 1990); Complete Interiors v. Behan, 558 So.2d 48 (Fla. 5th DCA 1990). The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. For example, the court might find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices." Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir. 1965). In contrast, the substantive component focuses on the agreement itself. As the court explained in Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865, 868 (Fla. 4th DCA 1981), a case is made out for substantive unconscionability by showing that "the terms of the contract are unreasonable and unfair."
As for the first element, we conclude that the arbitration clause at issue is procedurally unconscionable. Although not dispositive of this point, it is significant that the arbitration clause is an adhesion contract. Generally, an adhesion contract is defined as a "standardized contract form offered to consumers of goods and services on essentially [a] "take it or leave it" basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Black's Law Dictionary, 6th Ed. (1990). See also Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543, 544 (Fla. 3d DCA 1995) (stating the definition of an adhesion contract).
Powertel prepared the arbitration clause unilaterally and sent it along to its customers as an insert to their monthly telephone *575 bill. The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer. See Belcher; Kohl. Here, the customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchased from Powertel.
It is true, as Powertel argues, that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider. The fallacy of that argument, however, is that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel. They purchased equipment that works only with the Powertel service and they have obtained telephone numbers that cannot be transferred to a new provider. It is reasonable to assume that some customers may suffer a great deal of inconvenience and expense to obtain and publish a new telephone number. Hence, it is no answer to say that the customers can simply switch providers. Many customers may have continued their service with Powertel despite their objection to the arbitration clause simply because they had no economically feasible alternative.
Our conclusion that the arbitration clause is procedurally unconscionable is also supported by deficiencies in the notice of the revised terms of service. The pamphlet containing the clause appears at first glance to be little more than a restatement of the original terms and conditions of service. Apart from the effective date printed in small print below the title "Terms and Conditions of Service", there is nothing to indicate that the pamphlet contains anything new. The trial court expressed the view that Powertel should have given a more prominent notice of such an important change. In this regard the trial court stated:
I am real concerned. I don't think there's been the type of notice contemplated here. I don't' think there was ten days prior notification of any change or modification of certain conditions. The mere filing of this sending the pamphlet in the mail routinely with the bill in a very pamphlet similar to that which you received in the first place, I don't think this is the type of notice of a change, particularly a change of this nature, that the company could expect the consumer to know about.
These things are so routine of throwing pamphlets in the mail with billings and things of that nature that, Lord, I'll bet 90 percent just throw them out and don't even read them. Because it becomes so routine in today's mailing habits.
But I think something as significant as this should have been brought to the customer's attention in some manner. Now, I'm not dictating the manner. But either by bold print by a specific heading or by a notice in the pamphlet itself: Please look at paragraph so-and-so; it involves a change and requires arbitration in the future.
I don't think [defendant] has really complied with its own contract in a manner that would be binding upon the other parties. It isn't really conspicuous. It is in the middle of a paragraph that has essentially the same heading. It would have been such a simple matter to attach to that pamphlet: Please notice a change, paragraph whatever.
We agree with the trial court that the method Powertel employed may have left many customers unaware of the new arbitration clause.
Powertel argues that the trial court placed additional requirements on the validity of the arbitration clause in violation of the rule in Casorotto. In that case, however, the statutory restriction was limited to arbitration clauses. Here the trial *576 court's decision was based on general principles that would most certainly apply to any significant modification of a contract. The trial court did not suggest that the notice was insufficient because the modification was an arbitration clause. Presumably, the court would have found the notice insufficient for any fundamental change in the written agreement of the parties. It was the method of announcing the change that troubled the court, not the particular subject matter of the change.
As for the second major element, we conclude that the arbitration clause is substantively unconscionable. One indicator of substantive unconscionability is that the agreement requires the customers to give up other legal remedies. See Richard A. Lord, Williston on Contracts, § 18.13 (1998); Steven J. Ware, Arbitration and Unconscionability after Doctor's Associates, Inc. v. Casarotto, 31 Wake Forest L.Rev. 1001 (1996). That is so in the present case. The arbitration clause expressly limits Powertel's liability to actual damages, thereby precluding the possibility that Powertel will ever be exposed to punitive damages, no matter how outrageous its conduct might be. Powertel argues that this limitation works both ways, but as a practical matter, it is difficult to imagine any situation in which a telephone company would have an action for punitive damages against its customers. In effect, this provision removes a significant remedy that would otherwise be available in consumer litigation against a corporation.
The arbitration clause also effectively removes Powertel's exposure to any remedy that could be pursued on behalf of a class of consumers. See Champ v. Siegel Trading Co., Inc., 55 F.3d 269 (7th Cir. 1995) (holding that the court has no independent authority to compel arbitration of a class claim). Class litigation provides the most economically feasible remedy for the kind of claim that has been asserted here. The potential claims are too small to litigate individually, but collectively they might amount to a large sum of money. The prospect of class litigation ordinarily has some deterrent effect on a manufacturer or service provider, but that is absent here. By requiring arbitration of all claims, Powertel has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone. Again, this is an advantage that inures only to Powertel. The arbitration clause precludes class litigation by either party, but it is difficult to envision a scenario in which that would work to Powertel's detriment.
Moreover, the arbitration clause forces the plaintiff and other cellular telephone customers to waive important statutory remedies. The complaint in this case is based in part on an alleged violation of Florida's Deceptive and Unfair Trade Practices Act. One purpose of this Act is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." See § 501.202(2), Fla.Stat. (1997). An individual filing suit under the Act can obtain declaratory and injunctive relief in addition to a judgment for damages. See § 501.211, Fla.Stat. (1997). In contrast, the arbitration clause contains no provision that would allow an arbitrator to provide injunctive or declaratory relief.
The arbitrability of a statutory claim rests on the assumption that the arbitration agreement permits relief equivalent to that which is available in the courts. Therefore, an arbitration clause is not enforceable if it would defeat the remedial purpose of the statute upon which an action is based. See Randolph v. Green Tree Financial Corp.-Alabama, 178 F.3d 1149 (11th Cir.1999); Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1059 (11th Cir.1998). In the present case, the arbitration clause purports to apply to an action under Florida's Deceptive and Unfair Trade Practices Act, yet it does not authorize the arbitrator to afford *577 all of the same remedies. It is unreasonable to assume that the plaintiff and other cellular telephone customers would knowingly and voluntarily trade powerful remedies under a consumer protection statute for the limited right to recover actual damages under the arbitration agreement. Here again, the arbitration clause gives Powertel an unfair advantage. The fact that the arbitration clause effectively insulates Powertel from liability under state consumer laws is yet another reason to conclude that it is substantively unconscionable.
Apart from these points, we conclude that the arbitration clause cannot be applied to the lawsuit in the present case.[2] Assuming for the sake of argument that the arbitration clause is valid and that it can reach back to pre-existing disputes, it was not intended to apply to a dispute that has already ripened into a lawsuit. The original service agreement did not contain an arbitration provision, and Ms. Bexley filed the suit in this case before the arbitration clause was added in the amended terms and conditions of service. Cf. Hill v. Gateway 2000 Inc., 105 F.3d 1147 (7th Cir.1997) (dismissing a suit filed after the arbitration provision went into effect). At that point, Ms. Bexley elected a remedy that was inconsistent with arbitration.
Powertel maintains that the arbitration clause applies to existing disputes as well as future disputes but, without more, it cannot amount to an agreement to dismiss a pending lawsuit. It is one thing to say that the failure to object to the arbitration clause is an implied consent to arbitration, but it is quite another to conclude that the failure to object is the equivalent of a voluntary decision to dismiss a pending lawsuit. Nothing in the record suggests that the plaintiff agreed to dismiss her suit, and we cannot draw such a conclusion on the basis of her failure to object to new condition sent to her along with her phone bill.
In summary, we conclude that the arbitration clause in the revised statement of the terms and conditions of service cannot be enforced, because it is unconscionable. As we have explained, the arbitration clause is invalid as to both the procedural and substantive components of unconscionability. Finally, we are of the view that the arbitration clause does not apply to the litigants presently before the court, because it cannot be applied retroactively to a pending lawsuit. For these reasons, we affirm the trial court's decision invalidating the arbitration clause.
Affirmed.
JOANOS and BROWNING, JJ., CONCUR.
NOTES
[1] Chapter 682, Florida Statutes, the "Florida Arbitration Code," applies in such cases only to the extent that it is not in conflict with federal law. See Shearson/Lehman Brothers, Inc. v. Ordonez, 497 So.2d 703 (Fla. 4th DCA 1986); Old Dominion Ins. Co. v. Dependable Reins. Co., Ltd., 472 So.2d 1365 (Fla. 1st DCA 1985).
[2] This point would end the inquiry for the plaintiff Bexley, but not necessarily for all of the plaintiffs who are expected to join in the litigation. Therefore, it was necessary to consider the validity of the arbitration clause as well as its application.