Petition for a Writ of Mandamus Conditionally Granted; Appeal Reversed
and Remanded and Opinion Filed April 17, 2003









Petition for a Writ of Mandamus Conditionally Granted;
Appeal Reversed and Remanded and Opinion Filed April 17, 2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00496-CV

 

AUTONATION USA CORPORATION d/b/a
AUTONATION USA, Appellant

 

V.

 

THERESA M. LEROY, Appellee

 



 

On Appeal from the 268th District Court

Fort Bend County, Texas

Trial Court Cause No. 109,164

 



 

NO. 14-02-00728-CV

 

IN RE AUTONATION USA CORPORATION d/b/a AUTONATION USA,
Relator

 

____________

 

 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 

O P I N I O N








In these consolidated actions, AutoNation seeks mandamus
relief from the trial court=s denial of a motion to compel arbitration, and appeals the
trial court=s order certifying a class.  We conditionally grant the writ of mandamus,
reverse the trial court=s order certifying a class, and remand.




BACKGROUND FACTS

AutoNation formerly operated used-car megastores in Texas and
elsewhere in the United States. 
Customers who purchased a used car signed a “Purchase Agreement”
detailing the various charges and credits related to the transaction.  On the back of the Purchase Agreement was the
following provision:

Any controversy or claim arising out of or relating to
this Purchase Agreement or the breach thereof shall be settled by binding
arbitration in accordance with the Commercial Arbitration Rules of the American
Arbitration Association.  Any controversy
or claim subject to this arbitration provision shall be decided by one
arbitrator, and judgment on the award rendered by the arbitrator may be entered
in any court having jurisdiction thereof. 
Any arbitration proceeding shall be conducted in the city and state
where the vehicle purchased hereunder was purchased from [AutoNation].

Customers who financed their purchase also signed a “Retail Installment
Contract” (“RIC”) governing the terms of the financing.  The RIC did not include an arbitration
provision.

The Purchase Agreement reflected that AutoNation charged a
documentary fee of $50 in connection with the purchase of a vehicle.  Both the Purchase Agreement and the RIC
included a statement that the documentary fee may not exceed $50.  In 1997, AutoNation began charging customers
a vehicle preparation fee of $45. 
Between December 1997 and February 1998, however, certain RIC forms
reflected a documentary fee of $95.  According
to AutoNation, the $95 charge was the result of a computer programming error
that caused the $50 documentary fee to be combined with the $45 vehicle
preparation fee.  

Theresa Leroy, suing for herself and
on behalf of a proposed class, alleged that the $95 documentary fee in the RIC
violated section 348.006 of the Texas Finance Code, which prohibits a
documentary fee in excess of $50.  Leroy
also complained that the vehicle preparation fee is not authorized under
Chapter 348.  








Leroy moved for certification of a class of all persons or
entities who purchased and financed a car from AutoNation in Texas and were
charged more than $50 for a documentary fee or who were charged a vehicle
preparation fee.  AutoNation opposed the
motion for class certification and moved to compel Leroy to arbitrate her
claims as provided in the Purchase Agreement.   


The trial court denied AutoNation=s motion to compel arbitration,
finding that Leroy=s claims focused on the RIC and were outside the scope of the
arbitration clause contained in the Purchase Agreement.  At the same time, the trial court granted
Leroy=s motion for class certification.  The court defined the class as follows:

Any person who purchased and financed a car at
AutoNation in Texas from 1997 to present where the retail installment contract
reflects a documentary fee in excess of $50.00, save and except that there is
excluded from the class any person who opts out of inclusion in the class after
receiving notice of the action.

This mandamus and interlocutory appeal followed.

DISCUSSION

Because we find the arbitration issue dispositive of both the
mandamus action and the appeal, we will first discuss AutoNation=s request for mandamus relief.  We will then address AutoNation=s appeal of the class certification
order.

I.          AUTONATION=S REQUEST FOR MANDAMUS RELIEF








In the mandamus action, AutoNation contends the trial court
abused its discretion by denying AutoNation=s motion to compel arbitration
because (1) Leroy=s claims fall within the scope of the arbitration provision
in the Purchase Agreement, and (2) the Purchase Agreement and RIC must be
construed together.  In response, Leroy
contends that mandamus should be denied because AutoNation=s own actions show it does not
consider disputes arising under the RIC to be within the scope of the
arbitration provision, and her Finance Code claims arise solely under the RIC
and are completely independent of the Purchase Agreement.  Leroy additionally attempts to avoid the
effect of the arbitration clause by asserting that the clause is unconscionable
and AutoNation was not diligent in seeking mandamus relief. 

A.        The Applicable
Law

The parties agree this action is governed by the Federal
Arbitration Act (FAA) and mandamus is the appropriate method by which to
challenge the trial court=s ruling. See 9 U.S.C. ' 2 (2000); In re Am. Homestar of
Lancaster, Inc., 50 S.W.3d 480, 484 (Tex. 2001).  In determining whether to grant mandamus
relief in the context of a denial of an order to compel arbitration under the
FAA, we apply an abuse of discretion standard. 
See Am. Homestar, 50 S.W.3d at 483.  A trial court has no discretion to determine
what the law is and has no discretion in applying the law to the facts.  Id.[1]  Consequently, the trial court=s failure to analyze or apply the law
correctly is an abuse of discretion.  Id.

The Texas Supreme Court has unequivocally held that “[f]ederal and state law strongly favor arbitration.”  Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996).  The Court has further
stressed that “a presumption exists in favor of agreements to arbitrate under
the FAA,” and that “[c]ourts must resolve any doubts
about an agreement to arbitrate in favor of arbitration.”  Id. 
A party opposing an arbitration agreement bears the burden of defeating
it.  Id.  Once the party seeking arbitration
establishes that an agreement exits under the FAA and that the claims raised
are within the agreement=s scope, the trial court has no discretion but to compel
arbitration.  Id. 








The Texas Supreme Court has also emphasized that under the
FAA, “any doubts as to whether [a plaintiff’s] claims fall within the scope of
the agreement must be resolved in favor of arbitration.”  Prudential Sec. Inc. v.
Marshall, 909 S.W.2d 896, 899 (Tex. 1995).   Indeed,
“[t]he policy in favor of enforcing arbitration agreements is so compelling
that a court should not deny arbitration ‘unless it can be said with positive
assurance that an arbitration clause is not susceptible of an interpretation
which would cover the dispute at issue.’” 
Id. (quoting Neal v. Hardee=s Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990)).

In determining whether a claim falls within the scope of an
arbitration clause, courts must “focus on the factual allegations of the
complaint, rather than the legal causes of action asserted.”  Marshall, 909 S.W.2d
at 900.  In Pennzoil Co. v.
Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. App.CSan Antonio 2000, no pet.), the court
explained that “if the facts alleged ‘touch matters,’ have a ‘significant
relationship’ to, are ‘inextricably enmeshed’ with, or are ‘factually
intertwined’ with the contract that is subject to the arbitration agreement,
the claim will be arbitrable.”  However,
if the facts alleged in support of the claim stand alone, are completely
independent of the contract, and the claim could be maintained without
reference to the contract, the claim is not subject to arbitration.  Id. 
The language in the arbitration provision here, requiring arbitration of
any controversy or claim “arising out of or relating to” the Purchase Agreement
or the breach thereof, is recognized as broad language favoring
arbitration.  See Prima Paint Corp. v.
Flood & Conklin Mfg. Co., 388 U. S. 395, 398 (1967); Hou-Scape, Inc.
v. Lloyd, 945 S.W.2d 202, 205B06 (Tex. App.CHouston [1st Dist.] 1997, no writ); Babcock
& Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 230 (Tex. App.CHouston [14th Dist.] 1993, writ
denied).

B.        Are Leroy=s Claims Within the Scope of the
Arbitration Clause?








AutoNation contends Leroy’s claims touch matters relating to
the Purchase Agreement because her petition includes allegations that
AutoNation wrongfully charged some purchasers of used cars a documentary fee in
excess of $50, and/or AutoNation improperly charged purchasers vehicle preparation
fees.  Additionally, Leroy alleges that
AutoNation is liable to all class members for compensatory and statutory
damages, including “for reimbursement of that portion of the documentary fee
which exceeds the $50 maximum or the amount of the vehicle preparation fee.”  AutoNation points out that Leroy=s allegations concerning the vehicle
preparation fee and her request for damages, including reimbursement of the
fee, directly impacts upon AutoNation=s rights and Leroy’s obligations
under the Purchase Agreement because the vehicle preparation fee is included in
the terms and conditions of the Purchase Agreement.

Leroy=s primary argument in response is that AutoNation=s failure to arbitrate other disputes
relating to the RIC demonstrates that AutoNation itself does not consider such
claims within the scope of the arbitration clause.  In support of this contention, she points to
testimony of AutoNation representatives that they were not aware of any arbitration
provision in their contracts and did not arbitrate debt collection or other
related disputes arising out of the RIC. 
Leroy argues there is no evidence that, prior to this class action,
AutoNation ever resolved a dispute arising under the RIC through arbitration,
and this demonstrates that the RIC and the Purchase Agreement are not
interrelated.  Leroy also asserts that
AutoNation=s own lawyers did not discover the
arbitration clause or seek to enforce it until more than two years after this
case was filed.








Leroy cites no case law in support of this argument.  However, in Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576 (Tex. App.CHouston [14th Dist.] 1999, no pet.),
this court rejected a similar argument that a party to a contract containing an
arbitration provision waived the right to enforce the arbitration provision if
that party previously litigated matters involving the contract.  In Valero, we began our analysis by
recognizing the general rule that “[a] party waives its right to arbitration if
it substantially invokes the judicial process to the detriment of the opposing
party.”  Id. at
594.  To establish waiver, the
party opposing arbitration bears the burden of showing that the other party
acted inconsistently with the arbitration agreement and that it was prejudiced
by such conduct.  Id.  After reviewing the decisions of other courts
addressing the issue as well as general Texas law on waiver, we held that
Valero, the party seeking to compel arbitration, had not waived its right to
enforce the arbitration provision in the contract even though it had on one
occasion litigated a dispute over a related contract that contained a similar
arbitration provision.  Id.  In so holding, we found it significant that Teco, the party opposing arbitration, had not claimed that
Valero delayed its demand for arbitration and had not explained how any
previous litigation prejudiced arbitration of Teco’s
present claims.  Id.
at 595.  Similarly, Leroy does not
claim that AutoNation substantially invoked the judicial process to her
detriment or that AutoNation=s previous actions prejudiced arbitration of her claims.  Therefore, we reject Leroy’s assertion that
AutoNation=s actions in other cases prevent it
from seeking arbitration in the present case.

Leroy also counters that the crux of her claim is that the
documentary fee exceeded $50 in violation of the Texas Finance Code, and this
claim can be made without any reference to the Purchase Agreement.  See Tex.
Fin. Code Ann. ' 348.006(c) (providing that the documentary fee may
not exceed $50 for a motor vehicle retail installment contract).  She asserts that she only included the allegations
relating to the vehicle preparation fee in her petition in response to
AutoNation’s defense that the $95 documentary fee included the $45 vehicle
preparation fee.  She also asserts that
the RIC is a separate and independent contract used to finance the purchase of
a vehicle, while the Purchase Agreement has nothing to do with financing.  As support for this assertion, Leroy argues
that the Texas Finance Code applies only to retail installment contracts like
the RIC and financed transactions, noting that Leroy would have no claim under
the Texas Finance Code absent the RIC. 
Again, we disagree.








We find that Leroy=s allegations touch matters covered
by the Purchase Agreement.  Leroy raises
claims and seeks damages for a vehicle preparation fee that can only be
determined by reference to the Purchase Agreement.  Even if we ignore Leroy’s allegations
relating to the vehicle preparation fee, however, we remain unpersuaded by
Leroy’s assertion that the crux of her claimCthe payment of a
documentary fee in excess of $50Cdoes
not implicate the Purchase Agreement. 
While Leroy arranged to get financing for the documentary fee as part of
the total cost of her car purchase through the RIC, she did not contract in the
RIC to pay the documentary fee.  The
Purchase Agreement, not the RIC, contained Leroy=s agreement to pay AutoNation the
documentary fee, as well as the vehicle preparation feeCboth of which were
itemized in the Purchase Agreement.  On
these facts, the arbitration clause covers the dispute at issue, and we do not
see how Leroy=s claims are completely independent
of the Purchase Agreement so that they could be maintained without reference to
it.  See Marshall, 909 S.W.2d at 899; Arnold Oil Co., 30 S.W.3d at 498.

Moreover, the arbitration provision here is broad,
encompassing “[a]ny controversy or claim arising out
of or relating to” the Purchase Agreement.  The financing of Leroy=s vehicle is a matter that arises out
of and relates to Leroy=s agreement to purchase the vehicle, as reflected in the
Purchase Agreement.  But for Leroy=s purchase, there would have been no
relationship between the parties and no financing transaction that is the basis
of Leroy=s claims.  See In re Conseco Fin. Servicing Corp.,
19 S.W.3d 562, 570 (Tex. App.CWaco 2000, orig. proceeding) (holding that broad arbitration
provision encompassed statutory and tort claims not based on the formation,
negotiation, terms, or performance of contract); Gerwell v. Moran, 10
S.W.3d 28, 32B33 (Tex. App.CSan Antonio 1999, no pet.) (holding that broad arbitration provision in 1993 partnership
agreement encompassed claims arising out of 1999 agreement to assign
partnership interest).  Therefore, we
hold that Leroy’s claims are within the scope of the arbitration clause
contained in the Purchase Agreement.[2]

C.        Is the
Arbitration Clause Unconscionable?








Leroy argues that, even if we determine that the arbitration
clause applies to this dispute, it should not be enforced because it is
unconscionable.  The FAA declares written
provisions for arbitration “valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation of any contract.”  See 9 U.S.C. ' 2; Doctor’s Assocs. v. Casarotto, 517 U.S. 681, 687B88 (1996).  The doctrine of unconscionability can be
applied to arbitration provisions in the same manner as it applies to other
contracts.  See In re FirstMerit Bank,
N.A., 52 S.W.3d 749, 756 (Tex. 2001).  The burden is on the party seeking to avoid
the arbitration provision.  Id.  The basic test for unconscionability is
whether, given the parties= general commercial background and
the commercial needs of the particular trade or case, the clause involved is so
one‑sided that it is unconscionable under the circumstances existing when
the parties made the contract.  FirstMerit,
52 S.W.3d at 757. 
Its purpose is not to disturb the allocation of risks because of
superior bargaining power, but to prevent oppression and unfair surprise.  See id. 


Unconscionability includes two aspects: (1) procedural
unconscionability, which refers to the circumstances surrounding the adoption
of the arbitration provision, and (2) substantive unconscionability, which
refers to the fairness of the arbitration provision itself.  In re Halliburton Co.,
80 S.W.3d 566, 571 (Tex. 2002). 
Courts may consider both procedural and substantive unconscionability of
an arbitration clause in evaluating the validity of an arbitration
provision.  Id.
at 572.  Here, Leroy asserts that
the arbitration provision is procedurally unconscionable because it is not
conspicuous, and that it is substantively unconscionable because denial of the
class action here is fundamentally unfair and violates public policy.[3]








1.         The
Arbitration Clause is Not Inconspicuous.

Leroy argues that the arbitration provision is procedurally
unconscionable because it is not conspicuous. 
Leroy contends that AutoNation failed to make consumers aware of the
provision, and the provision is so “well-hidden” that its own lawyers did not
discover it for two years.  Leroy notes
that the arbitration provision is placed in the middle of several provisions
and “lacks a single characteristic to notify someone of its contents.”  In support of this contention, Leroy directs
us to Goodwin, 924 S.W.2d at 944, in which the Texas Supreme Court
rejected an argument that an arbitration provision was not conspicuous when the
provision was conspicuously displayed. 
Leroy also cites Texas Business and Commerce Code section 1.201(10) for
the general definition of “conspicuous.”  However, Leroy cites no authority holding
that an arbitration provision governed by the FAA must meet a conspicuousness
requirement. 

We do not find Leroy’s authority persuasive.  Texas law invalidates only certain types of
clauses if they are inconspicuous.  See
Tex. Bus. & Com. Code Ann. ' 2.316 (exclusion or modification of
implied warranty of merchantability); Dresser Indus., Inc. v. Page
Petroleum, Inc., 853 S.W.2d 505, 510B11 (Tex.1993) (contractual
indemnity); cf. Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 386B87 (Tex.1997) (no‑damages‑for‑delay
clause need not be conspicuous).  An
agreement governed by the FAA may be set aside for state contractual defenses
that apply to all contracts generally, but not for defenses that apply only to
arbitration contracts or clauses.  Casarotto, 517 U.S. at 687.  Thus, even if Texas law imposed a specific
conspicuousness requirement that might otherwise be applicable to this
arbitration provision, such a law would likely be preempted by the FAA.  

In any event, we find that the provision here was not so “well-hidden”
as Leroy contends, but was sufficiently obvious to give Leroy notice that
claims against AutoNation would be resolved through arbitration.  The Purchase Agreement consists of a single
page, front and back.  On the front,
directly above the customer signature line, the following paragraph appears:








By executing this Purchase Agreement, Purchaser
acknowledges that (1) Purchaser has been advised that the motor vehicle
purchased hereunder is a used motor vehicle, (2) Purchaser has been provided a
copy of the Purchase Agreement and has read and understands the Terms and
Conditions set forth herein (including the Additional Terms and Conditions set
forth on the reverse side hereof), and (3) Purchaser has agreed to
purchase the motor vehicle described herein on the terms and conditions set
forth herein and accepts such terms and conditions as a part of the Purchase
Agreement. …

(emphasis added).  Additional language on the front page
provides that “Purchaser is encouraged to review this Purchase Agreement
(including the Additional Terms and Conditions set forth on the reverse side
hereof) carefully and seek individual professional advice if Purchaser has any
questions concerning this transaction.” 
On the back of the document, the additional terms and conditions,
including the arbitration provision, are separately numbered and set out in
uniform type.  We do not find this
contract’s arbitration provision so inconspicuous that it is
unconscionable.  Cf. Webb v. Investacorp, Inc., 89 F.3d 252 (5th Cir. 1996) (noting
arbitration provision was not unconscionable when size of print was uniform
throughout contract).

2.         The
Arbitration Clause is not Fundamentally Unfair.








Leroy also contends that enforcement of the arbitration
provision is substantively unconscionable because prohibiting class treatment
of small-damage consumer claims is fundamentally unfair.  If we enforce the arbitration clause, Leroy
argues that consumers like her will be discouraged from seeking legal redress
on an individual basis, while businesses like AutoNation will be encouraged to
engage in illegal conduct because they will not have to be concerned about
potential class actions.  This assumes
that the right to proceed on a class-wide basis supercedes a contracting party=s right to arbitrate under the
FAA.  However, the primary purpose of the
FAA is to overcome courts= refusals to enforce agreements to arbitrate and to ensure
that private agreements to arbitrate are enforced according to their
terms.  See Volt Info. Scis.,
Inc. v. Bd. of Trs., 489 U.S. 468, 478B79 (1989).  The Texas Supreme Court has made it clear
that the FAA is part of substantive law of Texas, Capital Income
Properties-LXXX v. Blackmon, 843 S.W.2d 22, 23 (Tex. 1992), and has
stressed that “[p]rocedural devices,” such as Rule 42’s
provision for class actions, “may ‘not be construed to enlarge or diminish any
substantive rights or obligations of any parties to any civil action.’”  Southwestern Ref. Co.,
v. Bernal, 22 S.W.3d 425, 437 (Tex. 2000).  Accordingly, there is no entitlement to
proceed as a class action.  See, e.g., Johnson v. West Suburban Bank, 225 F.3d 366, 371,
374B75 (3d Cir. 2000); Marsh v.
First USA Bank, 103 F. Supp.
2d 909, 923 (N.D. Tex. 2000); Bernal, 22
S.W.3d at 439.

Leroy does not argue that arbitration will deprive her of any
substantive rights or statutory remedies under the Finance Code that she would
have otherwise as a member of a class. 
Instead, she argues that without the class action device, consumers will
be disinclined to pursue individual remedies for small damages.[4]  While there may be circumstances in which a
prohibition on class treatment may rise to the level of fundamental unfairness,
Leroy’s generalizations do not satisfy her burden to demonstrate that the
arbitration provision is invalid here.[5]  








3.         The
Arbitration Clause does not Violate Public Policy.

Leroy also argues that enforcement of the arbitration clause in
this circumstance will violate public policy in the following ways:  (1) purchasers will be discouraged from
pursuing their legal remedies because of the expense and the small amounts
involved; (2) most purchasers would likely remain unaware of the illegal fees
charged; and (3) arbitration of some 220 separate claims for small damage
amounts would unnecessarily overburden judicial resources.  We will address each in turn.

First, Leroy contends that consumers will be deterred from
seeking redress against AutoNation because the costs of arbitration will far
exceed the illegal $45 fee they were charged. 
In support of her argument, Leroy directs us to no record evidence, but
merely asserts that the American Arbitration Association=s commercial arbitration rules
require an initial filing fee of at least $650.00, and that once a consumer
commits to pay the arbitration administrative fee, the arbitrator=s fee, and attorneys= fees to assist in the arbitration, “it
is not unreasonable to believe the consumer=s cost will exceed $4,500.00.”  Because Leroy did not make this argument
below, we find it is waived.

Next, we address Leroy’s argument that most putative class
members would not be aware of the alleged illegal fees “because most customers
are not intimately familiar with the Texas Finance Code.”  Leroy directs us to no authority that this
factor, either alone or in conjunction with other factors, requires that an
arbitration provision be invalidated as substantively unconscionable.  Additionally, we note that on the front of
both the Purchase Agreement and the RIC there is a notice in all capital
letters reciting the following:








A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE.  A DOCU-MENTARY FEE IS NOT REQUIRED BY LAW,
BUT MAY BE CHARGED TO PURCHASERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES
RELATED TO THE CLOSING OF A SALE.  A
DOCU-MENTARY FEE MAY NOT EXCEED $50.

This notice is sufficient to put consumers on notice that a documentary
fee in excess of   $50.00 would be a
violation of the law.

Turning to Leroy’s last argument, she contends that the
arbitration provision violates public policy because some 220 individual
arbitrations, lawsuits, or trials to determine the enforceability of the
arbitration provision, in which each consumer seeks a small damages amount,
would drain consumer and judicial resources. 
However, as the Supreme Court made clear in Moses H. Cone Memorial
Hospital v.  Mercury Construction Co.,
the FAA  “requires piecemeal
resolution when necessary to give effect to an arbitration agreement.” Moses
H. Cone Mem’l Hosp. v. Mercury Const. Co. 460 U.S. 1, 20, 103 S. Ct. 927,
939 (1983) (emphasis in original); see also Johnson, 225 F.3d at 375
(citing Moses H. Cone for the principle that the FAA requires piecemeal
litigation to give effect to arbitration clauses “[w]hatever the benefits of
class actions”).

D.        Did AutoNation
Fail to Act Diligently in Seeking Mandamus Relief?

Finally, Leroy argues that AutoNation was not diligent in
pursuing mandamus relief because of its eight-month delay in filing its
petition for mandamus.  See Rivercenter Assocs. v. Rivera, 858 S.W.2d 366, 367
(Tex. 1993) (denying petition for mandamus when party=s unjustified four-month delay in
seeking relief demonstrated lack of diligence). 
However, this case is distinguishable from Rivercenter.  As noted above, a party seeking arbitration
waives its right to arbitrate when its actions cause the party opposing
arbitration to suffer actual prejudice.  See
Valero, 2 S.W.3d at 594.  A delay in making a demand for arbitration
does not constitute a waiver when the party opposing arbitration suffers no
actual prejudice.  Pepe Int’l Dev. Co. v.
Pub Brewing Co., 915 S.W.2d 925, 931 (Tex. App.CHouston [1st Dist]
1996, no writ).  Here, Leroy does
not assert that she was prejudiced in any way by the delay.  Therefore, we reject her contention
AutoNation is not entitled to seek mandamus relief.








We conditionally grant the writ of mandamus and direct the
trial court to vacate its order of December 28, 2001, denying AutoNation=s motion to compel arbitration.




II.        AUTONATION=S INTERLOCUTORY APPEAL

AutoNation’s interlocutory appeal of the trial court=s order certifying a class relies in
part on the existence of the arbitration provision in the RIC.  In its first issue, AutoNation argues the
order should be reversed because the claims of all the class members are subject
to arbitration, and therefore the requirements for class certification cannot
be met.  Notwithstanding the
applicability of the arbitration provision, AutoNation contends in three
additional issues that the purported class cannot satisfy the requirements of
Rule 42 because individual issues will predominate over common issues, class
treatment is not superior to other means of adjudication, and Leroy is not an
adequate class representative.  In
response, Leroy contends the trial court correctly determined that arbitration
had no bearing on the class certification issues and the court did not abuse
its discretion in granting class certification. 


Because we find that, like Leroy, the claims of the putative
class members are subject to arbitration, we hold that the trial court erred in
certifying a class but denying arbitration. 
Our resolution of AutoNation=s first issue renders it unnecessary
for us to discuss its remaining issues.  








Although we have determined that Leroy=s claims are subject to arbitration,
that does not necessarily foreclose the possibility of class-wide relief.  During oral argument, we raised the question
of the possibility of a class-wide arbitration. 
We requested the parties prepare supplemental briefing on the issue, and
both sides responded with excellent briefs. 
But arbitration of a class action is a relatively new and dynamic
concept.  See Richard Jeydel, Consolidation, Joinder and Class Actions:  What Arbitrators and Courts May and May Not
Do, 57 Disp. Resol. J.
24, 26 (2003) (“With employment, credit card and other form agreements now
being extended to large classes of potentially similarly situated individuals,
[class-wide arbitration] is an area ripe for development.”).  Leroy=s claims may be well-suited for
class-wide arbitration.  However, we have
decided not to address the issue at this time because (1) class-wide
arbitration was not requested below, (2) this record contains no evidence that
a class-wide arbitration is feasible or desirable, and (3) the trial court has
not had the opportunityCnor
has the arbitrator had an opportunity[6]Cto consider this as an option.  If the parties desire to request this type of
relief, they may do so in the trial court.

We therefore reverse the trial court=s May 15, 2002 order granting
certification and remand the case to the trial court.

CONCLUSION

We conditionally grant AutoNation=s writ of mandamus and direct the
trial court to vacate its order of December 28, 2001, denying AutoNation=s motion to compel arbitration.  Our writ will issue only if the trial court
fails to do so.  We also reverse the
trial court=s May 15, 2002 order granting
class certification and remand for further proceedings in accordance with this
opinion.

 

/s/        Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Memorandum Opinion/Opinion filed April 17, 2003.

Panel consists of
Chief Justice Brister and Justices Hudson and Fowler. 











[1]  This lack of
discretion in applying substantive law is not to be confused with the trial
court=s duty (under Schein)
in a class action involving multi-state class participants to determine which
state=s law applies to the claims.  See Henry Schein, Inc. v. Stromboe, 46
Tex. Sup. Ct. J. 103 (Tex. 2002).





[2]  We also agree
with AutoNation that Leroy=s claims are subject to arbitration based on the
well-settled principle of Texas contract law that A[when] several instruments, executed contemporaneously
or at different times, pertain to the same transaction, they will be read
together although they do not expressly refer to each other.@  See Fort
Worth Indep. Sch. Dist. v. City of Fort Worth, 22
S.W.3d 831, 840 (Tex. 2000). 
Here, the Purchase Agreement and the RIC reflect separate aspects of the
same transaction; therefore, the arbitration clause is applicable to Leroy=s complaints about the RIC on this ground as well as
on the on the ground of the broad scope of the arbitration clause.  See Neal v. Hardee=s Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990); Pers.
Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 394B95 (5th Cir. 2002); see also Quality Truck and Auto
Sales, Inc. v. Yassine, 730 So.2d 1164, 1169B70 (Ala. 1999) (holding that purchaser of vehicle was
required to arbitrate her claims even though seller did not sign bill of sale
containing arbitration clause when seller Aaccepted
and acted upon@ bill of sale by contemporaneously executing retail
installment contract). 





[3]  By way of a
footnote in her response to AutoNation=s
petition for mandamus, Leroy incorporates the argument made in her appellee=s brief that the arbitration clause is unconscionable
because it is not conspicuous.  It is
unclear from the footnote whether Leroy intended to incorporate all the
arguments she makes in support of her contention that the arbitration clause is
unconscionable; however, in an abundance of caution and in the interest of a
complete review, we will address her arguments regarding unconscionability in
their entirety in this section.





[4]  Leroy does not
contend that proceeding in arbitration deprives her of any right to invoke the
class action procedure available for violations of the Finance Code subtitle
governing loans and financed transactions. 
See Tex. Fin. Code Ann. ' 349.403.  Even if she had raised the issue, however,
federal law has long held that, so long as a party=s substantive rights may be
adequately vindicated, statutory claims may be arbitrated in the absence of a
specific congressional intent to preclude a waiver of judicial remedies for the
statutory rights at issue.  See Gilmer v. Interstate/Johnson
Lane Corp., 500 U.S. 20, 26 (1991). 
In Gilmer, the plaintiff argued that arbitration procedures could
not adequately further the purposes of the Age Discrimination in Employment Act
because they did not provide for class actions, but the Supreme Court disagreed, explaining that the availability of
the class action procedure under the ADEA did not evidence a congressional
intent to bar individual attempts at conciliation.  Id. at 32; see also Johnson,
225 F.3d at 377B78 (AEven if we were to conclude that the statute implies a
right to proceed as a member of a class, Gilmer indicates that rights of
this nature are waivable so long as the rights the statute was designed to
protect may be vindicated by other means. 
We do not think this unfair.@).





[5]  Nor do we find
Leroy=s authority persuasive.  In support of her argument that the
arbitration provision is unconscionable because it prevents individuals from
asserting their legal rights, Leroy cites two cases, Szetela
v. Discover Bank, 118 Cal. Rptr. 2d 862 (Cal. Ct.
App. 2002), and Powertel v. Bexley, 743 So. 2d 570 (Fla. Dist.
Ct. App. 1999).  In determining
that the arbitration clauses before them were unconscionable, the courts in Szetela and Bexley
considered the economic efficiencies and deterrent effect of the class action
procedure, but other issues factored more heavily into the decisions.  For example, in Szetela,
a credit card company=s arbitration provision expressly prohibited class
actions or actions as a private attorney general in arbitration, which
conflicted with California legislative policy. 
See Szetela, 118 Cal. Rptr. at 867B68.  Similarly, in Bexley,
the arbitration provision in a cellular telephone provider=s service agreement limited the provider=s liability to actual damages and required customers
to waive important statutory rights.  See
Bexley, 743 So.2d at 576B77.  Here, Leroy
does not argue that she will be deprived of any damages or statutory rights in
arbitration.





[6]  Because we
have not been asked to address this question, we express no opinion on whether
an arbitrator may determine if an arbitration is done
on a class-wide basis.