# Third District Court of Appeal

## State of Florida

Opinion filed November 4, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1100
Lower Tribunal No. 17-25214
_____

## SHEDDF2-FL3, LLC, etc.,
Appellant,

vs.

## Penthouse South, LLC, etc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Law Offices of Paul Morris, P.A., and Paul Morris; and Agentis PLLC, and Christopher B. Spuches, for appellant.

Ross & Girten, and Lauri Waldman Ross and Theresa L. Girten; and Law Office of Irv J. Lamel, and Irv. J. Lamel, for appellees.

Before EMAS, C.J., and HENDON and GORDO, JJ.

HENDON, J.

The issue before this Court is, in light of absolutely no evidence of procedural unconscionability, whether the trial court erred, as a matter of law, by invalidating a certain provision in the parties' clear and unambiguous Forbearance and Partial Settlement Agreement based on the trial court's determination that the provision was unconscionable. Based on the following, we conclude that the trial court did err, and therefore, we reverse the orders under review and remand for further proceedings consistent with this opinion.

## I.     Facts and Procedural Background

In 2013, Penthouse South, LLC ("Penthouse South") and Claudio Rossi Zampini ("Zampini"), individually, who is Penthouse South's sole director, obtained a $3,240,000 loan from TotalBank pledging Unit 2703-S of Bal Harbour North South Condo as collateral. In August 2016, Penthouse South and Zampini (collectively, "Borrowers") executed a forbearance agreement with TotalBank, admitting they were in default of the loan ("First Forbearance Agreement"). Thereafter, TotalBank assigned the mortgage and all loan documents, including the First Forbearance Agreement, to SHEDDF2-FL3, LLC ("Lender").

In 2017, the Lender initiated an action against the Borrowers, seeking to foreclose the mortgage and asserting that the Borrowers were in breach of the First Forbearance Agreement. After the foreclosure action was commenced, the Lender inspected Unit 2703-S and learned that it had been physically combined with an

2

adjacent unit, Unit 2702-S, which is owned by Parkwest Century, LLC ("Parkwest"), whose sole director is Zampini.

In July 2018, with all parties being represented by counsel, Penthouse South, Zampini, and Parkwest ("Obligors"), along with the Lender, entered into (1) a Mortgage Modification and Spreader Agreement ("Mortgage Spreader"), which resulted in Unit 2702-S being pledged as additional collateral for the loan, and (2) a Forbearance and Partial Settlement Agreement ("Second Forbearance Agreement"). In both the Spreader Agreement and the Second Forbearance Agreement, the Obligors acknowledged, among other things, that the Borrowers defaulted under the terms of the loan and breached the First Forbearance Agreement; the Obligors requested that the Lender enter into the Second Forbearance Agreement; and the Lender would not have agreed to enter into the Second Forbearance Agreement unless Parkwest agreed to pledge Unit 2702-S as additional collateral for the loan.

The Second Forbearance Agreement sets forth a schedule of payments, including payments for property taxes and condominium association assessments, that were required to be made by specific dates and on a timely basis. As part of the agreement, Parkwest and Penthouse South agreed to execute warranty deeds for their respective units, which would be held in escrow by the Lender's counsel in the event of a forbearance default, which included the failure to timely make any of the required payment. Paragraph 13 of the Second Forbearance Agreement sets forth

alternative remedies that the Lender, at its sole discretion, may choose in the event of a monetary default. One of the alternative remedies, which is set forth in paragraph 13(a), permits the Lender to immediately record the two warranty deeds held in escrow, without providing the Obligors with notice or an opportunity to cure. In addition, Parkwest and Penthouse South consented to the entry of a writ of possession in the Lender's favor. The Second Forbearance Agreement also provided that, in the event of a default, Parkwest and Penthouse South shall be deemed to have waived and released any redemption rights under the loan documents, the Spreader Agreement, and/or Florida law. After the parties executed the Spreader Agreement and the Second Forbearance Agreement, as permitted by the Second Forbearance Agreement, the Lender filed a second amended complaint adding Parkwest as a defendant, alleging the additional facts relating to the two agreements, and asserting a mortgage foreclosure count against the Obligors.

It is undisputed that the Obligors failed to make payments due on December 31, 2018, including failing to bring current all property taxes and condominium association fees due on the two units (over $700,000). Based on this monetary forbearance default, on January 9, 2019, as permitted in the Second Forbearance Agreement, the Lender recorded the two warranty deeds.

On January 23, 2019, Penthouse South filed a Motion to Enjoin Plaintiff Recording Deed or Transferring Property, and to Require Acceptance of Payment

4

("Motion to Enjoin"), asserting it was now ready, willing, and able to make all the payments that were due on December 31, 2018, which funds were in an attorney's trust account, but the Lender had refused to accept the funds. Penthouse South argued, among other things, that the Second Forbearance Agreement is unconscionable given the substantial equity in the properties (several millions of dollars), and that the trial court has the authority to relieve Penthouse South from such a forfeiture. The motion sought to enjoin the recording of the warranty deeds, and if recorded, to cancel the deeds, and to allow the Obligors to make the payments that were due on December 31, 2018.[1]

Following a non-evidentiary hearing, the trial court reserved ruling and ordered the Lender not to encumber or transfer the properties. In addition, the trial court advised the Obligors' counsel that if his clients were to have any prospect of securing relief from the trial court, they must tender all amounts due under the loan. The trial court ordered the Lender to provide an estoppel letter. As ordered, the Lender provided an estoppel letter indicating that more than $5,000,000 was due under the loan.

At an evidentiary hearing, the only witness called by the Obligors was an attorney who represented a lender that would be providing new financing to the

---

[1] As stated earlier, the Lender had already recorded the two deeds when Penthouse South filed its Motion to Enjoin.

5

Obligors. The attorney testified there was $5.5 million in escrow, and that those funds would be utilized to pay off the Lender. Further, the delay in funding this new loan was due to title issues—the units were in the Lender's name. The trial court reserved ruling on the Motion to Enjoin and ordered the parties to mediate.

After the parties reached an impasse at mediation, the Lender filed a notice of voluntary dismissal of the foreclosure count, stating that it had elected, as its default remedy under the Second Forbearance Agreement, to record the warranty deeds in lieu of foreclosure, rendering the foreclosure count moot. In addition, the Lenders filed a motion to enforce the Second Forbearance Agreement and for the trial court to reserve jurisdiction to enforce the Lender's rights under the agreement.

Following additional briefing from the parties, on May 11, 2019, the trial court entered the order under review, stating, in part, as follows:

> Why [the Obligors] would assent to such absurd and oppressive terms is difficult to fathom. But despite that assent this is one of those *extremely rare* cases where the Court will grant equitable relief and require that [the Lender] accept *full* payment of its debt together with default interest, penalties, costs and attorney's fees.

In its order, the trial court (1) granted the Motion to Enjoin, declaring the remedy in paragraph 13(a) invalid and unenforceable; (2) ordered the Lender to accept the amount of $5,272,354 together with interest at the default rate, and for the Borrowers to make the payment within 20 days to the Lender's counsel's trust account; (3) ordered the Lender to reconvey Unit 2702-S to Parkwest and Unit 2703-S to

6

Penthouse South; (4) ordered the Lender to pay all taxes and association fees that were included in the $5,272,354; and (5) denied the Lender's motion to enforce the Second Forbearance Agreement. Thereafter, the trial court amended this order to provide that once the Lender's counsel receives the funds from the Obligors, the Obligors' counsel may then submit a proposed order in which the trial court deems the two warranty deeds void *ab initio.*

The Lender filed a motion for rehearing and reconsideration. Thereafter, the Lender filed its notice of appeal, but requested that the appeal be held in abeyance, pending disposition of its motion for rehearing and/or reconsideration.

The Lender filed a motion for stay pending appeal in the lower tribunal. The trial court denied the Lender's motion, but granted the following alternative relief to the Lender: (a) pending appeal, the two properties cannot be transferred, sold, or encumbered; and (b) if the defendants seek to lease the properties, the Lender would have to approve, and if the parties cannot agree, the trial court will then determine if the units can be leased.

After the funds were sent to the Lender's counsel, the trial court entered an order denying the Lender's motion for rehearing and/or reconsideration, and an order voiding the deeds *ab initio*, satisfying the May 2013 mortgage, cancelling the May 2013 note, and discharging the lis pendens. The Lender amended its notice of appeal to include the order denying its motion for rehearing and/or reconsideration.

7

## II.   **ANALYSIS**

### A.  *Should the Lender's Appeal be Dismissed?*

Prior to addressing the primary issue raised by the Lender, the Obligors have argued in their answer brief that the Lender's appeal should be dismissed based on the Lender's voluntary acceptance of the benefit of the trial court's order—over $5.2 million, which included default interest, attorney's fees, and interest on attorney's fees.  The Obligors cite, in part, to McMullen v. Fort Pierce Financing & Construction Co., 146 So. 567, 568 (Fla. 1933), for the proposition that "[i]t is a well-settled doctrine that, where a party recovering a judgment or decree accepts the benefits thereof, voluntarily and knowing the facts, he is estopped to afterwards seek a reversal of such judgment or decree on writ of error or appeal."

The Obligors' reliance on this general rule is misplaced.  First, the order was clearly not in the Lender's favor as the trial court refused to enforce the unambiguous terms of the Second Forbearance Agreement based on unconscionability.  Second, the acceptance of the over $5.2 million was not voluntary.  The trial court ordered the Lender to accept the payment.  Thereafter, the Lender moved to stay the order pending appeal, but the trial court denied the motion to stay, and instead, granted alternative relief to the Lender pending resolution of the appeal, such as prohibiting the properties from being transferred or encumbered.  Thus, the acceptance was not voluntary, but was imposed by the trial court.

8

*III. Unconscionability*

The Lender contends that, in light of absolutely no evidence of procedural unconscionability, the trial court erred by invalidating paragraph 13(a) of the Second Forbearance Agreement. Based on our de novo review, we agree. See Nat'l Fin. Servs., LLC v. Mahan, 19 So. 3d 1134, 1136 (Fla. 3d DCA 2009), *abrogated on other grounds by* Basulto v. Hialeah Auto., 114 So. 3d 1145 (Fla. 2014) (applying de novo standard of review when addressing the trial court's invalidation of language in agreement based on procedural unconscionability); Powertel, Inc. v. Bexley, 743 So. 2d 570, 573 (Fla. 1st DCA 1999) (holding that a trial court's determination that a contract is unconscionable is "reviewable by the de novo standard"); Belcher v. Kier, 558 So. 2d 1039, 1040 (Fla. 2d DCA 1990) (stating that "the determination of unconscionability is a matter of law"); Garrett v. Janiewski, 480 So. 2d 1324, 1327 (Fla. 4th DCA 1985) (holding that "the question of unconscionability is one of law for the court").

"[S]ettlements are highly favored and will be enforced whenever possible." BAC Int'l Credit Corp. v. Macia, 626 So. 2d 1037, 1038 (Fla. 3d DCA 1993) (quoting Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)). However, a trial court can refuse to enforce a contract, such as a settlement agreement, based on unconscionability, Steinhardt v. Rudolph, 422 So. 2d 884 (Fla. 3d DCA 1982), with

9

the burden being on the party seeking to invalidate the contract. See Meeting Makers, Inc. v. Am. Airlines, Inc., 513 So. 2d 700, 701 (Fla. 3d DCA 1987).

In Basulto, the Florida Supreme Court stated that "[u]nconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'" Basulto, 141 So. 3d at 1157 (quoting Steinhardt. 422 So. 2d at 889) (quoting Peacock Hotel, Inc. v. Shipman, 138 So. 44, 46 (Fla. 1931)).[2] The Basulto Court explained that "[u]nconscionability has generally been recognized to include an *absence of meaningful* choice on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party.*" Basulto, 141 So. 3d at 1157 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965) (emphasis added in Basulto)).

To prevail in claiming that a contract or a contractual provision is unconscionable, a party must establish both procedural unconscionability and substantive unconscionability. Basulto, 141 So. 3d at 1158; Hobby Lobby Stores, Inc. v. Cole, 287 So. 3d 1272, 1275 (Fla. 5th DCA 2020). The absence of meaningful choice is referred to as procedural unconscionability, "which relates to the manner in which the contract was entered." Basulto, 141 So. 3d at 1157 (quoting Powertel,

_____

[2] Peacock Hotel involved a suit to foreclose a purchase-money mortgage.

10

743 So. 2d at 574). Substantive unconscionability pertains to the reasonableness of the terms of the contract, and therefore, "focuses on the agreement itself." Basulto, 141 So. 3d at 1157-58 (quoting Powertel, 743 So. 2d at 574). Although the party challenging the contract must establish both procedural and substantive unconscionability, both do not have to be present to the same degree. Basulto, 141 So. 3d at 1158-59. Instead, a "sliding scale" approach is utilized when both are present to some degree, and "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. at 1159. Under the "sliding scale" approach, "a balancing approach is employed allowing one prong to outweigh another **provided that there is at least a modicum of the weaker prong**." Id. (quoting VoiceStream Wireless Corp. v. U.S. Commnc'ns, Inc., 912 So. 2d 34, 39 (Fla. 4th DCA 2005)) (emphasis added).

In the instant case, the record demonstrates, and the Obligors' counsel properly conceded at oral argument, that there was absolutely no evidence of procedural unconscionability. Zampini, who is one of the Obligors and the sole director of the other two obligors (Parkwest and Penthouse South), did not testify at the evidentiary hearing. The Lender's representative's testimony indicates that there was no absence of meaningful choice by any of the parties when entering into the Second Forbearance Agreement. Further, the parties were represented by counsel

11

when they entered into the clear and unambiguous Second Forbearance Agreement. As such, we conclude that, because there was absolutely no evidence of procedural unconscionability, the Obligors' claim of unconscionability fails as a matter of law. See Kendall Imports, LLC v. Diaz, 215 So. 3d 95, 110 (Fla. 3d DCA 2017) (holding that because the party challenging the contract based on unconscionability failed to establish "any degree of procedural unconscionability," the contract was not unconscionable). Thus, we do not need to address whether the Second Forbearance Agreement is substantively unconscionable. See id. Accordingly, we reverse the orders under review and remand for further proceedings. On remand, the trial court is instructed to order (1) Parkwest and Penthouse South to execute warranty deeds transferring their respective units to the Lender, free and clear of any and all encumbrances; and (2) the Lender to return all funds received from the Obligors as a result of the orders under review, less any funds that must be utilized to ensure that the properties are transferred to the Lender free and clear of any encumbrances.

As we have reversed the orders under review, we do not need to address the remaining alternative argument raised by the Lender.

Reversed and remanded.