**In re Steve D. ROBINSON, Debtor.**

No. 99–57410.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 26, 2000.

**484**

Grady L. Pettigrew, Jr., Cox, Stein & Pettigrew, Columbus, OH, for debtor.

Frank M. Pees, Worthington, OH, Standing Chapter 13 Trustee.

## *OPINION AND ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIM OF CREDITOR CHAMPAIGN LANDMARK, INC.*

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This contested matter is before the Court on the objection of Steve D. Robinson ("Debtor") to the claim of Champaign Landmark, Inc. ("Champaign"). For the reasons that follow, the Court OVERRULES Debtor's objection. Debtor has failed to allege or prove specific facts that warrant revocation of the award entered in Champaign's favor by the National Grain and Feed Association ("NGFA") arbitration panel. Further, the Court concludes that the doctrine of *res judicata* adheres to the arbitration award, and precludes this Court from addressing the merits of Debtor's objection.

## I. *Findings of Fact.*

Debtor has been a farmer since he graduated from high school in 1973. He farms approximately 850 acres near Marysville, Ohio, raising corn, wheat and soybeans. For many years, Debtor had a business relationship with Champaign, an agricultural cooperative located near Urbana, Ohio. As part of its business, Champaign buys grain for resale, primarily from its members, including Debtor. Profits from these grain sales are distributed to members of the cooperative.

At issue between the parties are three contracts for the sale of grain by Debtor to Champaign. Each of the contracts is of a type commonly known as a "Hedge–to–Arrive" contract ("HTA"). Under the HTAs at issue here, Debtor was obligated to deliver a specified quantity of grain to Champaign on a date that was established at the formation of each HTA, but which could be deferred (known in the industry as "rolled") for a period of not more than two years from the inception of the relevant contract. Debtor defaulted on his obligation to deliver the grain, and Champaign canceled the contracts, calculates the amounts it claimed were due, and made a demand that Debtor satisfy the obligation. Debtor disputes his liability and refused to negotiate with Champaign.

Champaign then attempted, to enforce provisions of the HTAs that required the

parties to submit any disputes arising from the HTAs to arbitration before the NGFA.[1] After Debtor refused to submit to arbitration, Champaign commenced litigation in the Champaign County Common Pleas Court to compel Debtor to do so.

In December 1997, Champaign prevailed upon a motion for summary judgment in the state court proceeding, in which it sought enforcement of the HTAs' arbitration clauses. The Champaign County Common Pleas Court found that the contracts "require arbitration for all disputes and controversies of any nature with respect to the [HTAs]." The Common Pleas Court then referred the controversy to arbitration in accordance with the terms of the contracts. Debtor and Champaign then executed a "Contract for Arbitration" in which they each agreed to arbitration in accordance with NGFA's Rules of Arbitration, and to abide by any arbitration decision, which would be final, subject to NGFA's rules relating to appeals.

Champaign filed its complaint commencing arbitration before NGFA on or about June 2, 1998. Champaign alleged that Debtor failed to deliver grain in accordance with the terms of the HTAs, and was obligated to reimburse Champaign for damages resulting from Debtor's breach. In his answer, Debtor asserted that Champaign had unfairly and without his consent altered the terms of the HTAs as to the price he was to be paid upon delivery, and that the HTAs violated 7 U.S.C. §§ 6(a) and 6c(b), portions of the Commodity Exchange Act, and were unenforceable. Champaign replied to Debtor's answer, and Debtor filed a surreply. Although

either of the parties could have requested an oral hearing, neither did so, and the matter was submitted to arbitration on the pleadings.

The arbitration was conducted by a panel of three arbitrators appointed by NGFA. The parties were notified of the identity of the members of the arbitration panel in a letter written by NGFA on or about October 5, 1998. The parties were reminded of their right to contest the members of the arbitration panel in writing within five days. Neither party exercised this right. On or about October 19, 1998, the parties were notified of the withdrawal of one of the members of the arbitration panel, and the identity of his replacement. Again, the parties were reminded of their right to object within five days to the replacement's appointment, but neither chose to invoke this right.

On or about June 19, 1999, NGFA issued a report of the arbitration panel's unanimous decision. In a letter accompanying the report, NGFA reminded the parties of their right to appeal the arbitration decision within fifteen days, and the procedure for doing so. Neither Champaign nor Debtor appealed the arbitration panel's decision, and that decision became final in accordance with NGFA's rules.

■ The arbitration panel found in Champaign's favor with respect to each of the issues raised, and specifically concluded that the HTAs were valid "cash forward" contracts, and were exempt from regulation under the Commodity Exchange Act.[2] The arbitration panel en-

---

1. The language contained within each HTA regarding arbitration provided: "[s]eller and buyer agree that all disputes and controversies of any nature whatsoever between them with respect to this contract shall be arbitrated according to the Arbitration Rules of the National Grain & Feed Association, and that the decision and award determined thereunder shall be final and binding on Seller and Buyer."

2. Section 6(a) of the Commodity Exchange Act forbids transactions involving contracts

for the purchase or sale of a commodity for "future delivery" unless such transactions are conducted on or are subject to the rules of a board of trade designated by the Commodity Futures Trading Commission as a "contract market" for that commodity. The Commodity Exchange Act excludes from its definition of future delivery any "sale of a cash commodity for deferred shipment or delivery." 7 U.S.C. § 1a(11). Contracts that arrange the sale of a cash commodity for deferred shipment or delivery are known as "cash for-

tered an award against Debtor in the amount of $219,272.08, plus interest at a rate of 7.75% to be calculated from January 1, 1999 until the award was paid. The parties were ordered to pay their respective costs and attorney fees.

On August 17, 1999, Debtor filed a petition for relief under Chapter 12 of the Bankruptcy Code. Champaign was scheduled as the Debtor's only unsecured, nonpriority creditor. Champaign filed proof of its claim on September 29, 1999, asserting entitlement to payment of the arbitration award. On February 11, 2000, Debtor objected to Champaign's claim, raising, *inter alia*, arguments identical to those litigated before the NGFA arbitration panel. In its response to Debtor's objection, Champaign asserted that the arbitration award, having become final in accordance with NGFA's rules, was entitled to preclusive effect in this Court. Champaign also asserted that the HTAs were "cash forward" contracts, and exempt from the Commodity Exchange Act.

In pleadings filed to supplement his objection, Debtor alleged that the arbitration award should be vacated on the grounds that the arbitrators were biased, and exceeded or misused their authority in entering the award in Champaign's favor. Debtor raised this challenge under the

Federal Arbitration Act, 9 U.S.C. § 10. Champaign disputes these assertions, and argues that the award should stand.

In the interest of judicial economy, this Court bifurcated the issues raised in Debtor's objection to Champaign's proof of claim. The Court conducted a hearing on September 11, 2000 to determine whether Debtor could challenge the arbitration award under the Federal Arbitration Act, and whether the HTAs of *res judicata* applied to the arbitration decision and precluded this Court from considering whether the HTAs were valid and enforceable against Debtor. These are the issues now being addressed by the Court.

## II. *Conclusions of Law.*

Section 10 of the Federal Arbitration Act provides, in relevant part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration;

· · ·

(3) Where there was evident partiality or corruption in the arbitrators, or either of them;

---

ward" contracts, and cash forward contracts are exempt from regulation under the Commodity Exchange Act. *The Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 318 (6th Cir.1998).

Section 6c(b) provides that "no person shall offer to enter into or confirm the execution of, any transaction involving any commodity regulated under this Act which is of the character of, or is commonly known to the trade as, an 'option,' ... contrary to any rule, regulation, or order of the [Commodity Futures Trading] Commission prohibiting any such transaction ...." A commodity option "confers upon the holder the right to buy ... or sell ... either a specified amount of a commodity or a futures contract for that amount of a commodity within a certain period of time at a given price." *In re Farmers Cooperative Co., et al.*, 2000 WL 256118, *7 (C.F.T.C. March 9, 2000) *citing Commodity Futures Trading Comm'n v. U.S. Metals Depository Co.*,

468 F.Supp. 1149, 1154–55 (S.D.N.Y.1979). Except when such transaction is undertaken on a designated contract market, "no person may offer to enter into, confirm the execution of, or maintain a position in, any transaction in interstate commerce involving wheat, ... corn ... [or] soybeans ... if the transaction is or is held out to be of the character of, or is commonly known to the trade as an option ..." C.F.T.C. Regulation 32.2.

In this case, had Debtor's objection survived Champaign's *res judicata* defense, and had this Court examined the merits of Debtor's objection and found the HTAs not to be cash forward contracts, Champaign's claim could have been disallowed, as it is undisputed that the HTAs were not traded on a contract market. For further discussion of the cash forward exception to the Commodity Exchange Act, see *In re Gray*, 252 B.R. 689 (Bankr.S.D.Ohio 2000).

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Debtor argues that each of the arbitrators were employees of grain elevators and/or cooperatives, not farmers, and were accordingly biased in favor of Champaign. Debtor also argues that, by finding the HTAs to be valid cash forward contracts, the arbitrators exceeded or imperfectly executed their powers. The Court will address each of these arguments, and the proof provided to support them.

■ Debtor alleges the NGFA arbitration process is systematically biased given that the arbitrators must be members of NGFA, and that NGFA members are primarily grain elevator operators, not farmers. Debtor offered no proof in support of this allegation, merely stating it as fact during oral argument. Even assuming that Debtor's argument is true, the Sixth and Seventh Circuits have addressed identical challenges to NGFA's arbitration system, and have rejected allegations that the system is so biased. *The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 326 (6th Cir.1998); *Harter v. Iowa Grain Co.,* 220 F.3d 544, 553–57 (7th Cir.2000). Without any evidence offered in support of Debtor's allegations, this Court is unable to conclude that NGFA's arbitration process is biased in favor of Champaign.

■ Debtor also argues that the arbitrators exceeded or misused their authority in concluding the HTAs at issue were valid cash forward contracts. Debtor offered no authority in support of this argument. Indeed, the majority of courts addressing the issue has found HTAs to be enforceable. *See, Horton Farms,* 166 F.3d at 322 ("we hold that these HTA contracts fit within the cash forward contract exclusion to the [Commodity Exchange Act] and fall outside of [Commodity Futures Trading Commission] regulation"); *Grain Land Coop v. Kar Kim Farms, Inc., et al.,* 199 F.3d 983, 996 (8th Cir.1999)("we agree with the district court that Grain Land's

HTAs … were contracts for the sale of a cash commodity for deferred delivery and therefore not subject to the [Commodity Exchange Act]"); *Lachmund v. ADM Investor Services, Inc.,* 191 F.3d 777, 790 (7th Cir.1999) "([w]e hold … that the HTA contracts at issue in this case are cash forward contracts exempt from the purview of the [Commodity Exchange Act] ….."); *Nagel v. ADM Investor Services, Inc.,* 217 F.3d 436, 442 (7th Cir.2000)(affirming the district court's dismissal of plaintiff farmer's complaint on the grounds that the HTAs at issue were enforceable, cash forward contracts).

Debtor has failed to present authority sufficient to persuade this Court that the arbitrators manifestly disregarded the law in finding the HTAs at issue here to be cash forward contracts, enforceable against the Debtor. The Court now will address the merits of Champaign's assertion that its arbitration award is entitled to preclusive effect.

■ In the Sixth Circuit, the doctrine of *res judicata* may be invoked when the following elements have been established:

1. a final decision on the merits by a court of competent jurisdiction;

2. a subsequent action between the same parties or their privies;

3. an issue in the subsequent action that was litigated or should have been litigated in the prior action; and

4. an identity of causes of action.

*Kane v. Magna Mixer Co., et al.,* 71 F.3d 555, 560 (6th Cir.1995). As the party arguing in favor of the application of *res judicata,* Champaign bears the burden of proving that the doctrine should adhere to the arbitration award. 47 Am.Jur.2d, Judgments § 720 (1999). The Court will analyze each element, in turn.

1. *A final decision on the merits by a court of competent jurisdiction*

a. *Final decision*

Debtor argues that because the arbitration award was not confirmed by a court, it

did not become final, and is not entitled to preclusive effect. Champaign asserts that the award became final upon expiration of the period within which the award could have been appealed under NGFA's arbitration rules. NGFA's arbitration rules provide that appeals must be filed within fifteen days from the entry of the award, and neither party filed such an appeal in this case. The arbitration award therefore became final under NGFA's rules.

Several courts have found that arbitration awards, even those that have not been court confirmed, are entitled to preclusive effect. *See, Val–U Construction Co. of South Dakota v. Rosebud Sioux Tribe,* 146 F.3d 573, 582 (8th Cir.1998)(as the parties were given a full and fair opportunity to litigate the relevant issues in arbitration, and as, under the Federal Arbitration Act, federal courts must confirm arbitration awards absent a timely motion to vacate, even unconfirmed awards are entitled to *res judicata* effect); *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 267–68 (2d Cir.1997) (an unconfirmed arbitrator's award can furnish the basis for invoking the doctrine of *res judicata*); *Wilbert Life Ins. Co., et al. v. Beckemeyer (In re Beckemeyer),* 222 B.R. 318, 321 (Bankr. W.D.Tenn.1998)(an arbitration award that has become final, in accordance with the rules pursuant to which it was issued, has preclusive effect even if it has not been confirmed).

While the Sixth Circuit has not directly addressed this issue, it has shown deference to arbitration decisions. *See, Central Transport, Inc. v. Four Phase Systems, Inc.,* 936 F.2d 256, 259 (6th Cir.1991)(noting that "federal courts ordinarily give preclusive effect to arbitrations"); *Decker v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 205 F.3d 906, 910–11 ("[i]n light of the strong federal policy in favor of enforcing arbitration agreements, courts only have a limited role in reviewing arbitration awards as authorized by the [Federal Arbitration Act]"); *Horton Farms,* 166 F.3d at 322 ("A federal court may set aside an arbitration award under the [Federal Arbitration Act] only upon a finding that certain statutory or judicial grounds are present.")

The Court finds the decisions applying the doctrines of *res judicata* and/or collateral estoppel to final but unconfirmed arbitration awards to be highly persuasive. First, where the parties have had a full and fair opportunity to participate and litigate the pertinent issues before the arbitration panel, it would be unfair to provide the losing party with a "second bite at the apple." Indeed, forcing the prevailing party to incur the cost of re-litigating the issues upon which it prevailed seems patently unjust, in addition to being a waste of resources. Debtor entered into numerous contracts with Champaign that provided for mandatory arbitration of disputes. The Court sees no basis upon which Champaign should involuntarily lose the benefit of its bargain. No party should have the right to pick and choose which contract provisions are enforceable after the contract has become binding.

Debtor argues that affording the arbitration award preclusive effect would vitiate his opportunity to financially rehabilitate himself in bankruptcy court. While the Court does not take this argument lightly, it notes that seeking relief under the Bankruptcy Code is a privilege, not a fundamental right. *U.S. v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973)("There is no constitutional right to obtain a discharge of one's debts in bankruptcy.") Further, debtors cannot come before the bankruptcy court simply for the purpose of re-litigating matters in which they have not prevailed. Where state law allows it, even true default judgments in state court fraud actions have preclusive effect in subsequent bankruptcy court proceedings. *Bay Area Factors, A Division of Dimmitt & Owens Financial, Inc. v. Calvert (In re Calvert),* 105 F.3d 315, 322 (6th Cir.1997); *Cranfill v. Brown (In re Brown),* 215 B.R. 844, 846 (Bankr.E.D.Ky.

1998). There is no reason to rule differently for final arbitration awards.

Bankruptcy courts frequently determine parties' according to authority beyond the Bankruptcy Code, regardless of whether that authority weighs in favor of the Debtor. In light of the foregoing, this Court is compelled to follow the decisions holding that an arbitration award, which has become final in accordance with the rules pursuant to which it which it was issued, is entitled to preclusive effect in subsequent litigation.

### b. On the merits

■ Upon a review of the record in this case, the Court concludes that the arbitration panel addressed the merits of the dispute between the Debtor and Champaign. Each party participated in the arbitration, and were given every opportunity to present evidence and argument in support of their respective positions. Although neither party chose to exercise their right to demand an oral hearing, each submitted lengthy pleadings, supported by extensive documentary evidence, to the arbitration panel.

The arbitration panel's report establishes that it carefully addressed each of the issues raised in the pleadings, including whether Champaign complied with NGFA Grain Trade Rules with respect to modifications made to the HTAs and whether these contracts were valid and enforceable. Debtor may not agree with the arbitration panel's conclusion, but based upon the evidence presented here, the Court finds that the panel addressed the merits of all of the issues before it.

### c. By a court of competent jurisdiction

■ The parties cannot seriously dispute the competency of NGFA to arbitrate

their dispute, as each signed a contract in which they submitted themselves to NGFA's jurisdiction. Had either party wished to challenge the competency of any of the arbitrators, they could have done so on two occasions. Based upon the lack of any serious challenge as to NGFA's competency to arbitrate disputes such as that between Debtor and Champaign, the Court finds that NGFA qualifies as a "court of competent jurisdiction," and this element of the doctrine of res judicata to be proven.

### 2. A subsequent action between the same parties or their privies

As the parties to this contested matter are the same parties who participated in the NGFA arbitration, this element has been satisfied.

### 3. An issue in the subsequent action which was litigated or which should have been litigated in the prior action

At the heart of Debtor's objection is his argument that the HTAs are in the nature of futures contracts or options, rather than cash forward contracts, and fall within the purview of the Commodity Exchange Act. This issue was raised by the parties in the pleadings submitted to the arbitration panel, and was specifically addressed in the arbitration panel's report: "[t]he contracts were valid cash grain contracts containing delivery obligations, shipment periods and specified delivery locations." Therefore, there is no doubt that this issue was litigated before the arbitration panel.[3]

### 4. An identity of causes of action

■ The Sixth Circuit has defined an identity of causes of action as "identity of

---

**3.** The decision in In re Gray, Ch. 12 Case No. 99–50415 (Bankr.S.D.Ohio August 31, 2000) is distinguishable. The record in Gray contains no indication that the legality of the relevant HTAs was argued before, or otherwise considered by, the arbitration panel. The Gray court also concluded that the facts

and evidence necessary to arbitrate the issues presented were not the same as those relevant and necessary to a determination of the validity of the HTAs under the Commodity Exchange Act, and found the final element of the doctrine of res judicata unsatisfied as well.

the facts creating the right of action and of the evidence necessary to sustain each action." *Begala v. PNC Bank, N.A.*, 214 F.3d 776, 780 (6th Cir.2000) *citing Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). Here, the identical facts pled before the arbitration panel form the basis for Debtor's objection to Champaign's claim, as both involve disputes arising from the HTAs. In particular, the question of the validity of the contracts was submitted to arbitration, and was specifically addressed in the panel's decision. As this issue is common to both this contested matter and the arbitration, there can be no doubt that the evidence necessary to analyze this question also would be common to both matters.

### III. *Conclusion*

In sum, the Court finds that Debtor has failed to bring forth proof or authority sufficient to warrant the revocation of the arbitration award under the Federal Arbitration Act. Further, the doctrine of *res judicata* adheres to the arbitration panel's decision and precludes this Court from addressing the merits of Debtor's objection to Champaign's claim. Accordingly, the Debtor's objection to the claim of Champaign Landmark, Inc. is OVERRULED.

IT IS SO ORDERED.