Justin L. PRITCHARD, Plaintiff,

v.

DENT WIZARD INTERNATIONAL CORP., Defendant.

No. C2–03–490.

United States District Court, S.D. Ohio, Eastern Division.

July 29, 2003.

John William Ferron, Leslie Blair Graden, Ferron & Associates, Columbus, OH, for Plaintiff.

Luis Manuel Alcalde, Crabbe Brown & James, Columbus, OH, Hugh D. Berkson, Cleveland, OH, for Defendant.

## ORDER AND OPINION

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Defendant's Motion to Dismiss on Jurisdic-

tional Grounds Only and Plaintiff's Motion for Preliminary Injunction. The Court held a hearing on June 19, 2003. Based on the evidence presented and the arguments of counsel, the Court **DENIES** Defendant's Motion to Dismiss on Jurisdictional Grounds Only and **DENIES** Plaintiff's Motion for Preliminary Injunction.

## II. Facts and Procedural History

Defendant, Dent Wizard International Corp. ("Dent Wizard" or "Defendant"), is engaged in the paintless dent removal business. Paintless dent removal is the general process of removing dents from automobiles without requiring painting or refinishing of the surface. Dent Wizard's founder perfected a special paintless dent removal technique, which Dent Wizard employees utilize. Dent Wizard guards information about this technique, holding it as a trade secret and forbidding its employees from sharing information about the technique with anyone outside the company. Dent Wizard has its headquarters in St. Louis, Missouri.

Plaintiff, Justin Pritchard ("Pritchard" or "Plaintiff"), lives in the Columbus, Ohio, area, where he works as a paintless dent removal technician. He moved to the area in 1992 to take a job with a Dent Wizard franchisee, FD Investments, Inc. ("FDI"). A college friend of Pritchard's who had acquired the FDI franchise recruited him to Columbus. Shortly after joining FDI, Pritchard entered a Technician Employment Agreement (the "Employment Agreement") and a Dent Wizard Technician Secrecy Agreement (the "Secrecy Agreement") (collectively, the "Agreements") with FDI.

The Agreements each contain an arbitration clause, which states in relevant part as follows:

Except insofar as the Employer [FDI] elects to enforce this Agreement by judicial process as hereinabove provided, all disputes and claims relating to the pro-

visions hereof, or the alleged breach hereof, shall be settled by arbitration only, at the office of the American Arbitration Association located closest to the Employer's principal office under the United States Arbitration Act (9 U.S.C. Section 1, et seq.), if applicable, and the Rules of the American Arbitration Association relating to commercial disputes.... This Agreement to arbitrate shall continue in full force and effect subsequent to, and notwithstanding, the expiration or termination of Employee's employment by Franchisee, the Employer, or any other franchisee of the Employer.

The Employment Agreement contains a choice-of-law provision requiring the agreement to be governed under Missouri law. The Secrecy Agreement contains a provision requiring it to be governed under Florida law "[e]xcept to the extent governed by the United States Arbitration Act and the federal common law of Arbitration." Pritchard also entered a secrecy agreement directly with Dent Wizard in 1992, which contains the same arbitration and choice-of-law clauses as the Secrecy Agreement. Furthermore, Pritchard signed an Addendum to Trainee Secrecy Agreement, Noncompete and Nondisclosure Agreement (the "Addendum") with Dent Wizard on February 28, 1997. The Addendum incorporated the provisions of the Secrecy Agreement and contained additional provisions related to Prichtard's training in a certain "advanced process."

The Agreements contain some handwritten alterations, which Pritchard did not make, but which he negotiated with FDI and Dent Wizard. For example, the Employment Agreement contains handwritten changes awarding Pritchard a draw and commission earlier in his employment than the Employment Agreement's standard terms would provide. Although Pritchard was required to sign the agreements if he

intended to be employed by FDI and Dent Wizard, he was aware of the key terms of the Agreements. For example, Pritchard testified that he was aware of and somewhat concerned about one provision that required him to repay FDI certain training expenses if he left the company less than two years after he began his employment.

Although Pritchard testified that he was unaware of the arbitration provisions in the Agreements, he did know that Dent Wizard actively enforced its secrecy and noncompete agreements with other employees. Pritchard's employment with Dent Wizard was lucrative. In 2000, he earned about $140,000, and in 2001, before he resigned, he earned about $105,000.

In 1996, Gandalf, L.L.C. ("Gandalf") acquired FDI's Dent Wizard Franchise, and in 2001, Dent Wizard repurchased the franchise from Gandalf.[1] Later in 2001, due in part to the sale of the franchise, Pritchard decided to terminate his employment with Dent Wizard. Pritchard sent a resignation letter to Dent Wizard's Missouri office on September 28, 2001. The letter stated that Pritchard intended to resign his employment effective October 12, 2001, two weeks after the letter. The letter also stated that Pritchard intended to terminate the Employment Agreement effective October 12, 2001, including any addenda to the Employment Agreement, including the Secrecy Agreement. With respect to termination, the Employment Agreement provides as follows: "[T]his agreement may be terminated at any time by either party for any reason whatsoever upon the giving of two (2) weeks prior written notice."

On October 15, 2001, Pritchard filed a Complaint for Declaratory Judgment in the Court of Common Pleas, Franklin County, Ohio, seeking a declaration that he had properly terminated the Agreements and did not possess any Dent Wizard trade secrets. On December 11, 2002, the Ohio court dismissed Pritchard's complaint for improper venue, finding that under the Agreements, venue was proper in Missouri, not in Ohio. Although Dent Wizard participated in the Ohio litigation to the extent that it responded to Pritchard's complaint, Dent Wizard primarily sought to dismiss the complaint for improper venue and to compel arbitration in Missouri. The Ohio court's order dismissing Pritchard's complaint for improper venue is currently on appeal.

In early 2002, Dent Wizard filed a Petition for Injunctive and Other Relief and Damages in the Circuit Court of St. Louis County, Missouri. Dent Wizard sought various forms of injunctive relief and damages for breaches of the Agreements. Pritchard removed the case to federal court, and moved to have the case dismissed or transferred to Ohio. Ultimately, Dent Wizard voluntarily dismissed the Missouri action.

In the meantime, however, Dent Wizard initiated arbitration proceedings in St. Louis. On April 2, 2002, Dent Wizard filed a Demand for Arbitration with the American Arbitration Association ("AAA"), demanding arbitration with Pritchard and alleging violations of the Secrecy Agreement. Pritchard sought to have the arbitration proceedings dismissed, arguing

1. Pritchard argues that there is no evidence that FDI or Gandalf ever assigned any of their rights under the Agreements to Dent Wizard. First, the Court concludes that when Dent Wizard repurchased the franchise from Gandalf, it would have repurchased all rights of the franchisee with respect to the franchise. Second, whether Dent Wizard in fact has any

rights under the Agreements is irrelevant to the essential determination in this case of whether the Agreements are subject to mandatory arbitration. Finally, even if Dent Wizard has no right under the Secrecy Agreement Pritchard signed with FDI, Pritchard also signed a separate secrecy agreement directly with Dent Wizard.

that Dent Wizard did not have a right to seek arbitration under the Agreements for a number of reasons, including that it had waived its right to arbitration when it sought judicial relief in Ohio and Missouri courts. On September 17, 2001, the arbitrator found that he had jurisdiction over the case and denied Pritchard's motion to dismiss the arbitration. The arbitrator's Order did not analyze any of Pritchard's arguments for dismissal.

Ultimately, the AAA arbitration was scheduled for May 30, 2003. On May 28, 2003, Pritchard filed his Complaint for Declaratory Judgment and Injunctive Relief in this Court. His Complaint seeks a declaration that he properly terminated the Agreements, that the forum selection clauses in the Agreements are unenforceable, and that Pritchard does not possess any Dent Wizard trade secrets. The Complaint also seeks injunctive relief staying the AAA arbitration proceedings in St. Louis. On May 28, 2003, Pritchard also sought a temporary restraining order and a preliminary injunction to enjoin the AAA arbitration proceedings. In order to give the Court additional time to consider Pritchard's motion for a temporary restraining order, the parties agreed to continue the AAA proceeding. On June 2, 2003, the Court denied Pritchard's motion for a TRO, but the parties agreed to reschedule the AAA arbitration to allow the Court an opportunity to conduct a hearing on Pritchard's Motion for Preliminary Injunction Staying Arbitration. On June 6, 2003, Defendant filed a Motion to Dismiss on Jurisdictional Grounds Only.

The Court now decides Pritchard's Motion for Preliminary Injunction Staying Arbitration and Dent Wizard's Motion to Dismiss.

## III. Jurisdiction

As a threshold matter, the Court must consider whether it has jurisdiction to hear this case. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and Pritchard is a citizen of Ohio, while Dent Wizard is a citizen of Missouri.

Defendant argues in its Motion to Dismiss on Jurisdictional Grounds Only that this case should be dismissed based on the first-to-file rule, the *Colorado River* abstention doctrine, and res judicata.

### A. First–to–File Rule

Defendant argues that the first-to-file rule forbids this Court from considering Plaintiff's Complaint because he previously filed a nearly identical complaint in Ohio state court. According to the first-to-file rule, " '[i]n all cases of concurrent jurisdiction, the court which first had possession of the subject must decide it.' " *Am. Modern Home Ins. v. Insured Accounts Co.*, 704 F.Supp. 128, 129 (S.D.Ohio 1988) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535, 6 L.Ed. 152 (1824)). "The first-to-file rule is a well-established doctrine that encourages comity among *federal courts* of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 Fed.Appx. 433, 437 (6th Cir.2001) (emphasis added). Defendant notes that Ohio state courts follow a similar rule called the jurisdictional priority rule, which holds that the Ohio state court in which an action is first filed has jurisdiction over the matter exclusive of all other Ohio state courts. *See Whitehall ex rel. Wolfe v. Ohio Civil Rights Comm'n*, 74 Ohio St.3d 120, 656 N.E.2d 684, 688 (1995).

In this case, neither the federal first-to-file rule nor the Ohio jurisdictional priority rule bar this Court's jurisdiction over Plaintiff's Complaint. Plaintiff's earlier filed complaint was in Ohio state court, not another federal court. Therefore, the federal first-to-file rule does not apply. Defendant urges the Court to reach the novel conclusion that the first-to-file rule

and the state jurisdictional priority rule should be read together in the interest of comity to bar Plaintiff's Complaint in this Court. The Court declines to extend the first-to-file rule in this manner, finding that notions of comity and federalism between federal and state courts are properly addressed under the rubric of the federal abstention doctrines, to which the Court next turns its attention.

Therefore, the Court **DENIES** Defendant's Motion to Dismiss based on the first-to-file rule and the jurisdictional priority rule.

### B. *Colorado River* Abstention

 Defendant argues that this Court should abstain from hearing this case based on the *Colorado River* abstention doctrine. The Supreme Court first articulated the doctrine now known as *Colorado River* abstention in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). According to the doctrine, federal courts may sometimes abstain from hearing a case because an identical or similar case is pending in state court. *Id.* at 818– 19, 96 S.Ct. 1236. *Colorado River* abstention "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). *Colorado River* abstention, therefore, is akin to a first-to-file rule for actions that are first filed in state court and then filed in federal court. *See id.* at 817–18, 96 S.Ct. 1236. But federal courts should abstain only in exceptional circumstances after considering several factors, not just whether the state court action was filed first. *See id.* at 818, 96 S.Ct. 1236.

 Before considering the *Colorado River* abstention factors, the Court must first determine whether the state and federal actions in question are parallel actions. The two proceedings need only be "'substantially similar,'" not exactly parallel. *Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir.1998) (quoting *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989)). Plaintiff's action in Ohio state court and his Complaint before this court seek a declaration that he terminated the Agreements with Defendant and that he does not possess any trade secrets of Defendant. Plaintiff's Complaint before this Court also seeks injunctive relief staying arbitration proceedings in Missouri. All of Plaintiff's claims are substantially similar because they all stem from his contention that he has not breached the Agreements with Defendant. Therefore, Plaintiff's Ohio state court case is parallel to the case *sub judice.*

 To determine whether *Colorado River* abstention is applicable to this case, the Court must consider eight factors. Application of the doctrine does not depend, however, on a "mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court must consider the following eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 207 (6th Cir.2001) (quoting *Romine,* 160 F.3d at 340–41).

With respect to the first factor, the Ohio state court has not assumed jurisdiction over any res or property. Regarding the second factor, the federal forum in this case is not less convenient to the parties because both the federal and state courts are located in Columbus, Ohio. Defendant argues that St. Louis, Missouri is a more convenient forum, but there is no parallel state court proceeding pending in Missouri. The third factor requires the Court to consider whether hearing this case will create piecemeal litigation. The Court finds that entertaining this case will not create piecemeal litigation because the Ohio state court case has been dismissed based on improper venue and that decision is pending on appeal. The Ohio state court has not decided any substantive issues in the case and there is no reason to believe that it ever will because the case has been dismissed for improper venue.

The fourth factor weighs in favor of abstention because the Ohio state court obtained jurisdiction over Plaintiff's claims before this Court obtained jurisdiction. With respect to the fifth factor, the source of governing law in this case is state law, but not Ohio law. Rather, the Agreements contain express choice-of law-provisions that provide that Missouri or Florida law control the Agreements. These provisions do not weigh in favor of abstention, however, because the Ohio state court is no better at interpreting Missouri and Florida law than is this Court. The sixth and seventh factors weigh against abstention because the state court action cannot adequately protect Plaintiff's rights and because the state court action did not progress far before it was dismissed. The state court action cannot adequately protect Plaintiff because that case has been dismissed. Finally, with respect to the eighth factor, this Court and the Ohio state court have concurrent jurisdiction over all of Plaintiff's claims.

Considering all of these factors together and the weight in favor of maintaining jurisdiction, *Cone,* 460 U.S. at 16, 103 S.Ct. 927, the Court finds that *Colorado River* abstention does not apply in this case. Although the Ohio state court obtained jurisdiction before this Court and there is a slight risk of piecemeal litigation should the Ohio state court case be reinstated on appeal, all other factors weigh in favor of the Court exercising its jurisdiction to hear this case. If the Ohio state court case were currently proceeding on its merits, the Court would need to giver greater consideration to the risk of piecemeal litigation. *See Healthcare Capital, LLC v. Healthmed, Inc.,* 213 F.Supp.2d 850, 859 (S.D.Ohio 2002) (invoking *Colorado River* abstention where "extraordinary circumstances" existed because the same parties and issues were already involved in litigation in four cases before three different courts) But because the state court case has been dismissed pending appeal, this Court must not neglect its general duty to adjudicate the case properly before it. *See Colo. River,* 424 U.S. at 813, 96 S.Ct. 1236 (" 'The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' ") (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

Therefore, the Court **DENIES** Defendant's Motion to Dismiss based on the *Colorado River* abstention doctrine.

## C. Res Judicata

Finally, Defendant argues in its Motion to Dismiss on Jurisdictional Grounds Only that the Ohio state court's decision that venue was improper in Ohio is res judicata in this case. Therefore, Defendant contends that this case should be dismissed for improper venue because it is brought

in an Ohio court, albeit a federal, not a state court. Furthermore, Defendant argues that the finding of the AAA arbitrator in St. Louis that Defendant has not waived its right to arbitration is res judicata in this case barring Plaintiff's contention that Defendant has waived its right to arbitration.

### (1) Ohio Court's Dismissal for Improper Forum

■■■■ This Court must give the decisions of Ohio state courts the "same full faith and credit ... as they have by law or usage in the courts of" Ohio. 28 U.S.C.A. § 1738 (West 2003). In determining whether a state court judgment has preclusive effect on an action in federal court, "the federal court must apply the law of the state in which the prior judgment was rendered." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir.1999). Ohio subscribes to the modern rule of res judicata, which states that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995).

■■■■ The Ohio Court of Common Pleas, however, did not render a final judgment on the merits when it dismissed Plaintiff's case for improper venue. According to Federal Rule of Civil Procedure 41(b), dismissal for improper venue is not an adjudication upon the merits. Although Ohio Rule of Civil Procedure 41(B)(4) does not mention dismissal for improper venue as an example of an adjudication other than on the merits, the commentary to the rule makes clear that such a dismissal is not a final judgment on the merits. Ohio Rule 41(B)(4) was amended in 1971 "by deleting the provision for a dismissal of the action on the grounds of 'improper venue' " because "the remedy for the objection to

'improper venue' is transfer of the action to a proper venue and not dismissal of the action." Ohio R. Civ. P. 41(B)(4) note 3. Therefore, the Ohio court's order "dismissing" Plaintiff's case for improper venue does not constitute a final judgment on the merits. *See Romanchik v. Lucak*, 44 Ohio App.3d 215, 542 N.E.2d 699, 699 (1988) ("An order granting or denying a motion for change of venue is interlocutory and not subject to review until final judgment is rendered in the new jurisdiction."); *State ex rel. Lyons v. Zaleski*, 75 Ohio St.3d 623, 665 N.E.2d 212, 214 (1996) ("[An] order changing venue does not constitute a final appealable order and is reviewable only after a final judgment is entered .... ").

■■■■ Defendant has not filed a motion to dismiss for improper venue in this case. Rather, Defendant argues that this case should be dismissed based on the Ohio court's finding of improper venue. As discussed above, the Ohio court's decision is not res judicata in this case because it is not a final judgment on the merits. Furthermore, the determination of whether this court is a proper venue requires application of federal law, not Ohio law. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (holding that federal law governs a district court's determination of proper venue and whether to transfer a case based on a contractual forum-selection clause). Therefore, an Ohio court cannot dictate whether this Court is a proper venue for Plaintiff's claims.

### (2) Arbitrator's Decision to Hear This Case

■■■■ Defendant also argues that the St. Louis arbitrator's decision that Defendant has not waived its right to arbitration serves as res judicata in this case where Plaintiff asks the court to find that the arbitration clauses in the Agreements are

void, unenforceable, or have been waived. The arbitrator issued a two paragraph order on September 17, 2002, finding that the AAA has jurisdiction over the arbitration between Plaintiff and Defendant and that Defendant has not waived its right to arbitration.

 Unlike state court judgments, federal courts are not required to give arbitration awards preclusive effect. *See McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 287–88, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (noting that 28 U.S.C. § 1738 does not require federal courts to give arbitration awards full faith and credit because arbitration is not a judicial proceeding). Nevertheless, under certain circumstances, where the parties have had full opportunity to be heard in arbitration, federal courts may give arbitration judgments preclusive effect as a matter of public policy. *See Stulberg v. Intermedics Orthopedics, Inc.,* 997 F.Supp. 1060, 1068 (N.D.Ill.1998) (affording preclusive effect to arbitrator's decision in breach of contract case where both parties "received an extensive opportunity to fully litigate the breach of contract issue" before the arbitrator); *In re Robinson,* 256 B.R. 482, 488 (Bkrtcy.S.D.Ohio 2000) ("[W]here the parties have had a full and fair opportunity to participate and litigate the pertinent issues before the arbitration panel, it would be unfair to provide the losing party with a 'second bite at the apple.'").

In this case, however, public policy does not weigh in favor of affording preclusive effect to the St. Louis arbitrator's decision that he has jurisdiction to hear the dispute between Plaintiff and Defendant. The parties have not yet had an opportunity to litigate the matter before the arbitrator on the merits. Furthermore, the arbitrator's decision cannot serve as res judicata in this case because the arbitrator has not reached a final judgment on the merits.

Therefore, the Court will not afford preclusive effect to the St. Louis arbitrator's decision that he has jurisdiction over the dispute between Plaintiff and Defendant.

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss based on res judicata.

## IV. Preliminary Injunction Standard of Review

 In determining whether to issue a preliminary injunction, the Court must consider the following factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) the irreparable harm that could result to the movant if the injunction is not issued; (3) the possibility of substantial harm to others if the injunction is issued; and (4) whether the public interest would be served by issuing the injunction. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir. 1998). The elements are factors to be balanced against each other, but each element need not be satisfied to issue a preliminary injunction. *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1480 (6th Cir.1995). In other words, the "degree of proof necessary for each factor depends on the strength of the plaintiff's case on the other factors." *Golden v. Kelsey–Hayes Co.,* 73 F.3d 648, 657 (6th Cir.1996). A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000). This Court will examine each of the elements to determine whether Plaintiff has met his burden.

## V. Analysis

### A. Likelihood of Success on the Merits

According to the Demand for Arbitration and Petition for Injunctive and Other

Relief and Damages filed before the AAA in St. Louis, Dent Wizard seeks enforcement of the Secrecy Agreement, not the Employment Agreement, before the arbitrator. In determining whether to grant Pritchard's Motion for Preliminary Injunction Staying Arbitration, the Court must determine whether Plaintiff is likely to succeed on his claim that the arbitration clause in the Secrecy Agreement is unenforceable. In making their arguments about Pritchard's likelihood of success, the parties cite Ohio, Missouri, and federal law, but do not address the choice-of-law issue presented. As a threshold matter, the Court must determine what law applies in this case.

 The Secrecy Agreement is clear that the arbitration provisions of the agreement are to be governed under the Federal Arbitration Act, 9 U.S.C. §§ 1–307 ("FAA"). The parties do not dispute the applicability of the FAA, which states in relevant part that

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 1999). Therefore, the arbitration clause in the Secrecy Agreement is presumptively valid and enforceable.

 The Secrecy Agreement also contains a choice-of-law provision requiring Florida law to govern the agreement. Some of Pritchard's arguments concerning the validity of the arbitration clause of the Secrecy Agreement require application of state contract law. To determine what state's law to apply, this Court must apply the choice-of-law principles of Ohio. *See Muncie Power Prods., Inc. v. United Techs. Automotive, Inc.*, 328 F.3d 870, 873

(6th Cir.2003) ("Federal courts sitting in diversity must apply the choice-of-law rules of the forum state.") (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In Ohio, a contract clause that dictates which state's law governs the agreement is generally enforceable. *See Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683, 686 (1983) (adopting Restatement (Second) of Conflict of Laws § 187 (1971) and holding that the law of the state chosen by the parties to a contract will be respected except in limited circumstances); *Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St.3d 474, 747 N.E.2d 206, 209 (2001) (noting that "subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties"); *Woelfling v. Great–West Life Assurance Co.*, 30 Ohio App.2d 211, 285 N.E.2d 61, 66 (1972) (holding that "in the absence of a statutory prohibition, [an insurance policy], as in any other contract, can provide for the system of state law which should govern the contract"). The parties do not argue that the choice-of-law clause in the Secrecy Agreement, which requires Florida law to govern, is invalid. Therefore, in determining whether the arbitration clause in the Secrecy Agreement is enforceable, the Court will follow the FAA for issues related to interpreting the arbitration clause specifically, and Florida contract law for issues related to general contract formation and validity.

Pritchard argues that the arbitration clause is unenforceable for five reasons. First, he argues that he cancelled the agreement when he terminated his employment with Dent Wizard. Second, he contends that Dent Wizard has waived its right to arbitration by participating in judicial proceedings concerning the Agreements. Third, Pritchard maintains that the arbitration clause is unconscionable.

Fourth, Pritchard alleges that the Secrecy Agreement is unenforceable because it is an adhesion contract. Fifth, he contends that the arbitration clause is insufficient to waive his right to a jury trial. The Court will consider these arguments in turn.

### 1. Cancellation of Secrecy Agreement

Pritchard argues that he completely cancelled the Agreements when he sent Dent Wizard his resignation letter on September 28, 2001. Indeed, the Employment Agreement provides that it can be cancelled at any time upon two weeks prior written notice to either party. Therefore, Pritchard may have successfully terminated his employment with Dent Wizard when he sent his resignation letter. But terminating his employment with Dent Wizard was insufficient to cancel the arbitration provision of the Secrecy Agreement. Instead, the arbitration clause of the Secrecy Agreement explicitly states that "This Agreement to arbitrate shall continue in full force and effect subsequent to, and notwithstanding, the expiration or termination of [Pritchard's] employment by the Company." Therefore, the Court finds that Pritchard is not likely to succeed on his claim that the arbitration clause in the Secrecy Agreement is unenforceable because he terminated the Employment Agreement.

### 2. Dent Wizard's Waiver of Arbitration

Pritchard next argues that Dent Wizard has waived its right to arbitrate the Secrecy Agreement because Dent Wizard has participated in several judicial proceedings concerning the Agreements. Dent Wizard responds that no substantive proceedings concerning the Agreements have occurred outside of the arbitration, and in any event, Pritchard has not been prejudiced by any judicial proceedings to date.

The Court must apply the law of the FAA in determining whether Dent Wizard has waived its right to arbitration. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see also Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir.1991) (citing *Fisher* and setting forth the same requirements for waiver). The FAA establishes such a strong policy in favor of arbitration, however, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir.2001) ("The party opposing arbitration 'bears the heavy burden of proving waiver.' ") (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir.1996)).

Although Dent Wizard knew of its right to compel arbitration, Pritchard has failed to prove that Dent Wizard acted inconsistently with its right to arbitration or that Pritchard was prejudiced by Dent Wizard's inconsistent acts. Pritchard argues that Dent Wizard acted inconsistently with its right to arbitration when it defended against Pritchard's lawsuit in Ohio state court and when it filed a separate lawsuit in Missouri against Pritchard. With respect to the Ohio litigation, Dent Wizard's participation in no way evidenced waiver of its right to arbitration. In fact, Dent Wizard sought dismissal of the Ohio case and

filed a motion to compel arbitration. Ultimately, the Ohio case was dismissed for improper venue.

Dent Wizard also did not waive its right to arbitration by filing the Missouri lawsuit against Pritchard. That lawsuit was short-lived, and Dent Wizard chose to dismiss it voluntarily shortly after it was commenced. This is unlike cases where courts have found that a party acted inconsistently with its right to arbitration. For example, in *Uwaydah v. Van Wert County Hospital*, 246 F.Supp.2d 808 (N.D.Ohio 2002), the court found that a party had acted inconsistently with its right to arbitration where it had actively participated in litigation. In *Uwaydah*, the case before the court was "on the brink of resolution," had been pending for eighteen months, and the parties had participated in substantial discovery, including discovery methods not available in arbitration. *Id.* at 810–11. Because the Missouri action never precipitated any substantive proceedings, it does not serve as the basis for waiver of the arbitration clause.

Finally, none of Dent Wizard's actions in judicial proceedings has prejudiced Pritchard. Dent Wizard sought to compel arbitration in the Ohio case, thereby notifying Pritchard that Dent Wizard wanted to assert its right to arbitration. Furthermore, the Missouri case was dismissed soon enough that Pritchard suffered no prejudice. "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Stifel*, 924 F.2d at 159. Pritchard has failed to demonstrate that he has suffered any such prejudices.

Therefore, the Court concludes that Dent Wizard has not waived its right to arbitration under the Secrecy Agreement by participating in judicial proceedings.

### 3. Unconscionability and Adhesion Contract

Pritchard next argues that the arbitration clause in the Secrecy Agreement is unenforceable because it is unconscionable and because the entire agreement is an adhesion contract. Pritchard contends that the arbitration clause is unconscionable because it gives Dent Wizard the option to pursue judicial remedies or arbitration, at its discretion. He further alleges that the Secrecy Agreement is an adhesion contract because it was offered to him on a take-it-or-leave-it basis.

■ Under Florida law, "[t]o support a finding of unconscionability sufficient to invalidate an arbitration clause, the court must find that the contract is both procedurally and substantively unconscionable." *Chapman v. King Motor Co. of S. Fla.*, 833 So.2d 820, 821 (Fla.Dist.Ct.App.2002) (citing *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla.Dist.Ct.App.1999)). Procedural unconscionability relates to the process of contract formation, the relative bargaining strengths of the parties, and whether the parties had the "ability to know and understand the disputed contract terms." *Powertel*, 743 So.2d at 574. Substantive unconscionability addresses the agreement itself, and whether its terms are "unreasonable and unfair." *Id.*

■ First, the Court must determine whether the Secrecy Agreement is procedurally unconscionable. The Court considers Pritchard's argument that the Secrecy Agreement is an adhesion contract as his argument that the agreement is procedurally unconscionable. The fact that a contract is an adhesion contract is significant to determining whether it is procedurally unconscionable, but "not dispositive of this point." *Id.* at 574. An adhesion contract is a standardized form contract offered by a party with greater bargaining power to a weaker party on a

take-it-or-leave-it basis. *See id.; Pasteur Health Plan, Inc. v. Salazar,* 658 So.2d 543, 544 (Fla.Dist.Ct.App.1995). The mere fact that a contract contains an arbitration clause, however, does not make it an adhesion contract. *Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986). Rather, "there is nothing inherently unfair or oppressive about arbitration clauses" and parties to a contract may not avoid their obligations "by showing that [they] did not read what [they] signed." *Id.*

In this case, Pritchard was afforded an opportunity to read and negotiate the terms of the Employment Agreement and the Secrecy Agreement. In fact, he was able to negotiate certain changes in the Employment Agreement to afford him a draw and commission earlier in his employment than the Employment Agreement's standard terms would have provided. Pritchard knew that Dent Wizard routinely enforced the Secrecy Agreement against former employees. He understood other complex provisions of the Agreements, such as the requirement in the Employment Agreement that he reimburse Dent Wizard for training expenses if he left the company within two years of beginning his employment. Even if Pritchard did not know about the arbitration clause when he signed the Agreements, his testimony reveals that he certainly had the opportunity and capacity to read and understand it. Therefore, Pritchard is unlikely to succeed on his claims that the Secrecy Agreement is an adhesion contract and is procedurally unconscionable.

■ Next, the Court will consider whether the Secrecy Agreement is substantively unconscionable.[2] Pritchard contends that the arbitration clause in the Secrecy Agreement is substantively unconscionable because it is one sided. Even a one-side arbitration clause, however, is not unconscionable where the parties are not required to surrender any substantive rights. *See Avid Eng'g, Inc. v. Orlando Marketplace Ltd.,* 809 So.2d 1, 5 (Fla.Dist. Ct.App.2001). Although the Secrecy Agreement gives Dent Wizard the option of pursuing judicial remedies or arbitration, the agreement does not require Pritchard to surrender any substantive rights. Therefore, he is unlikely to prove that the Secrecy Agreement is substantively unconscionable.

Therefore, the Court finds that Pritchard is unlikely to succeed on his claims that the arbitration clause in the Secrecy Agreement is unenforceable because it is unconscionable and the agreement is an adhesion contract.

### 4. Waiver of Right to Jury Trial

■ Finally, Pritchard argues that the arbitration clause in the Secrecy Agreement was insufficient to waive his right to a jury trial guaranteed by the Ohio and Missouri constitutions. Without considering whether either the Ohio or Missouri constitutions are applicable in this case, the Court can readily dismiss Pritchard's argument. Pritchard has failed to demonstrate how the arbitration clause in the Secrecy Agreement is so inadequate as to overcome the mandate of the FAA that arbitration clauses "shall be valid, irrevocable, and enforceable." 9 U.S.C.A. § 2. Therefore, the Court finds that Pritchard is unlikely to succeed on his claim he has a right to a jury trial under the Ohio and

---

**2.** In fact, because the Court has found that the Secrecy Agreement is not procedurally unconscionable, the Court is not required to consider whether it is substantively unconscionable. *See Eldridge v. Integrated Health Servs., Inc.,* 805 So.2d 982, 982 (Fla.Dist.Ct. App.2001) (declining to consider issue of substantive unconscionability where contract was not procedurally unconscionable).

Missouri constitutions that supersedes the arbitration clause in the Secrecy Agreement.

## B. Irreparable Harm

■ The Court must next consider whether Pritchard faces any irreparable harm if he is required to participate in the arbitration in St. Louis. Pritchard argues that he faces irreparable harm because the arbitration will be costly and because he cannot afford to transport his witnesses to St. Louis for the arbitration.

There is nothing inherently unfair, however, about being required to participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration. Although Pritchard will face certain costs in connection with the arbitration in St. Louis, those costs do not constitute irreparable harm. *See Emery Air Freight Corp. v. Local Union 295,* 786 F.2d 93, 100 (2d Cir.1986) ("The monetary cost of arbitration certainly does not impose such legally recognized irreparable harm."); *see also Wiepking v. Prudential–Bache Sec., Inc.,* 940 F.2d 996, 999 (6th Cir.1991) (noting that although being compelled to participate in arbitration that is later determined to be unenforceable may be "unfortunate," it does not constitute "irreparable harm"). Furthermore, the Court is not convinced that the costs of arbitration constitute "harm" at all, much less irreparable harm. The costs associated with arbitration are no more a harm than the expenses Pritchard has already paid to pursue an action in Ohio court and the present case in this Court. Pritchard bore all of those costs voluntarily when he filed his lawsuits.

Furthermore, Pritchard can limit the costs associated with the arbitration in St. Louis by using video taped witness testimony, rather than paying to transport all of his witnesses to St. Louis to provide live testimony. Finally, the Court finds Pritchard's argument that he cannot afford to defend himself in mediation unpersuasive. Thus far, Pritchard has filed lawsuits in Ohio state court and this Court. He has defended himself against a lawsuit in Missouri, removing it to federal court before it was ultimately dismissed. He testified that he pays his counsel up to $300 an hour, and that he is able to pay those fees. The notion that he is financially unable to defend himself in a mediation is disingenuous given the lengthy legal proceedings in which he has already engaged at *his* initiative, not Dent Wizard's.

The Court therefore finds that Pritchard is not likely to face irreparable injury if he is forced to participate in mediation in St. Louis to settle disputes under the Secrecy Agreement.

## C. Substantial Harm to Others

■ The Court now considers whether granting Pritchard's Motion for Preliminary Injunction would cause any harm to others. Pritchard argues that Dent Wizard would not face any harm if the arbitration were stayed, while Dent Wizard contends that the longer it must wait to resolve this dispute, the longer it suffers harm from Pritchard's breach of the Secrecy Agreement.

The Court finds that given the amount of time that has passed since Pritchard terminated his employment—almost two years—Dent Wizard is unlikely to face substantial harm by further delay of the arbitration process. In fact, Dent Wizard has moved to continue the arbitration on a number of occasions. Nevertheless, the Court finds that Dent Wizard faces at least some harm from any further delay of the arbitration process. If the arbitrator finds that Pritchard breached the Agreements, then Dent Wizard is entitled to relief.

Therefore, the Court finds that the substantial harm to others factor weighs

slightly in favor of denying Pritchard's Motion for Preliminary Injunction.

### D. Public Interest

Because Pritchard has failed to demonstrate a strong likelihood of success on the merits, the public interest factor plays little part in the Court's decision to deny a preliminary injunction. Nevertheless, the Court considers the public interest factor to weigh in favor of Dent Wizard. The public has an interest in the enforceability of contracts. To the extent that the arbitration provision in the Secrecy Agreement is valid, Pritchard must live by it. Furthermore, in enacting the FAA, Congress announced a policy of favoring arbitration agreements and requiring parties to abide by them. *See Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 932 (6th Cir. 1998).

### E. Balancing the Four Factors

Finally, the Court must balance the four preliminary injunction factors. Each of the factors in this case weigh in favor of denying Pritchard's Motion for Preliminary Injunction. First, the Court finds that Pritchard is unlikely to succeed on the merits of his claim that the arbitration clause in the Secrecy Agreement is unenforceable. This factor alone is sufficient to deny Pritchard's motion. But the Court also finds that Pritchard faces no irreparable harm in the arbitration process and that Dent Wizard faces some harm if the arbitration is further delayed. Finally, although playing little role in the Court's decision, the public interest weighs against granting Pritchard's motion. Therefore, Pritchard's Motion for Preliminary Injunction is **DENIED.**

### VI. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss on Jurisdictional Grounds Only and DE-NIES Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**